**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

Michael L. Lobato,

      Plaintiff,

                                Case No. 09-cv-1203 BB/RLP

v.

State of New Mexico Environment Department,
Environmental Health Division, *et al.*,

      Defendants.

### MEMORANDUM OPINION

On December 28, 2009, Mr. Michael Lobato, a former employee of the New Mexico Environment Department, Environmental Health Division (the Health Division), filed suit against the Division, his supervisors, and several co-workers. He has alleged discriminatory and retaliatory treatment in violation of Title VII, the First Amendment, the Fourteenth Amendment Equal Protection and Due Process Clauses, and the New Mexico Human Rights Act. He also filed a state law claim for battery against Defendant Norman Norvelle. On November 5, 2010, Defendants collectively filed three motions to dismiss. The Court must determine whether, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should grant Defendants' motions.

For the reasons explained below, the Court concludes that Plaintiff has adequately stated claims for state law battery and violations of the New Mexico Human Rights Act, the First Amendment, and the Equal Protection Clause. However, the Court finds that the following claims cannot survive Defendants' motions to dismiss: Plaintiff's claims against the individual Defendants under Title VII, his due process claim, and his constitutional claims against Defendants Salomon Romero, John Rhoderick, David Torres, and Norman Norvelle. Therefore, Defendants' motions to

dismiss Plaintiff's assault and battery claim, First Amendment claims, and Equal Protection claims are DENIED. Defendants' motion to dismiss Plaintiff's New Mexico Human Rights Act claims are DENIED in part and in part HELD IN ABEYANCE. Finally, Defendants' other motions to dismiss are GRANTED.

## **Factual and Procedural Background**

Mr. Lobato alleges that in December of 2007, he was hired as an Inspector for the Health Division in Farmington. A few months later, in March of 2008, Mr. Lobato observed that a work supervisor had been accepting bribes. Mr. Lobato reported this misconduct to the Human Resources Director, Defendant Judy Bentley. After Mr. Lobato made this report, other employees began threatening Mr. Lobato and making derogatory remarks about his hispanic heritage. Mr. Lobato reported the verbal abuse to Ms. Bentley. On July 4, 2008, Mr. Lobato filed reports with the Equal Employment Opportunity Commission (EEOC) alleging that the program manager and district manager were discriminating against him by referring to him as a "F___ing Mexican[]" and threatening that the "Mexicans at the Farmington Office need to be fired." (Doc. 20, Defs. Ex. A.) Further, in May of 2008, the district manager, Defendant Charles Lundstrom, allegedly stated, "I will not hire a Mexican into a management position." (*Id.*); (Doc. 1, at 7.) After making this comment, Defendant Lundstrom allegedly promoted to manager a white, non-hispanic with less seniority than Mr. Lobato. (Doc. 20, Defs. Ex. A); (Doc. 1, at 7.)

Later, on November 17, 2008, Defendant Lundstrom, Mr. Lobato's supervisor, ordered Mr. Lobato to move heavy items against departmental policy, which caused Mr. Lobato injury. (Doc. 1, at 7.) Then, on December 5, 2008, Defendant Norvelle physically attacked Mr. Lobato. (*Id.* at 8.) Finally, on December 17, 2008, Defendant Carlos Romero fired Mr. Lobato. (*Id.*) Mr. Lobato alleges

that Defendant Bentley, the Human Resources Director, had substantial input into the decision to fire Mr. Lobato and that the termination was grounded in discriminatory motives. Subsequently, on December 27, 2008, Mr. Lobato filed another claim with the EEOC alleging that he was illegally fired.

The following year, on December 28, 2009, Mr. Lobato filed suit against the Division and his supervisors for violations of state tort law, Title VII, the Fourteenth Amendment Equal Protection and Due Process Clauses, the First Amendment, and the New Mexico Human Rights Act. On November 5, 2010, the Defendants filed the three motions to dismiss now before this Court.

**Discussion**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may not grant a motion to dismiss if the facts alleged in the complaint set forth a plausible claim for relief, rather than a merely speculative claim. *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). Further, "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted). To this end, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts. *Dias*, 567 F.3d at 1178. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). With the preceding standard in mind, the Court considers each of Defendants' motions to dismiss.

**I.  Title VII Claims Against Individual Defendants**

Defendants first argue that Plaintiff's Title VII claims for race/national origin discrimination, retaliatory job harassment, and wrongful discharge against the individual defendants must be dismissed. In the Tenth Circuit, plaintiffs may not sue individual supervisors in their personal capacity for employment discrimination under Title VII. *See Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996); *see also Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.1 (10th Cir. 2007). Therefore, insofar as the complaint can be read to bring Title VII claims against Carlos Romero, Charles Lundstrom, Salomon Romero, John Rhoderick, David Torres, Norman Norvelle, and Judy Bentley in their personal capacities, the Court grants the Motion to Dismiss Plaintiff's Title VII claims against these Defendants.

**II.  New Mexico Human Rights Claims**

Unlike under Title VII, the New Mexico Supreme Court has held that plaintiffs may sue defendants in their individual capacity for violations of the New Mexico Human Rights Act (the Human Rights Act). *See Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001); N.M. Stat. Ann. §§ 28-1-10, 13 (2010). Defendants argue that to sue individuals under the New Mexico Human Rights Act for discrimination, a plaintiff must name those individuals in the charge of discrimination administratively filed to exhaust the state's remedies. (Doc. 20, at 3.) Defendants are correct. *See Sonntag*, 22 P.3d at 1193. Defendants further argue that Plaintiff here failed to individually name any defendant other than the New Mexico Environment Department, so all claims under the Human Rights Act against the Defendants, other than the Health Division, must be dismissed with prejudice. (*Id.* at 4.)

Plaintiff's attorney failed to respond to Defendants' motion to dismiss the New Mexico Human Rights claims. Thus, Defendants argue in their reply brief that because Plaintiff failed to respond to the motion, the Court should grant Defendants' requested motion for dismissal with prejudice without assessing the case on the merits. They cite District of New Mexico Local Rule 7.1(b), which provides that a party's failure to respond to a motion within the set time period constitutes consent to grant the motion. However, Defendants overlook a crucial exception to that rule. With respect to a dispositive motion, including a motion to dismiss for failure to state a claim, courts in the Tenth Circuit may not grant the motion simply because opposing counsel failed to respond. *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (a district court may not grant a motion to dismiss for failure to state a claim "merely because [a party] failed to file a response"). Instead, "the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 1178.[1]

Proceeding to the merits, under the New Mexico Human Rights Act, a party must exhaust administrative remedies against each particular defendant before suing that defendant in court. *Sonntag*, 22 P.3d at 1193. That requires that a plaintiff name each individual he intends to sue in the charge of discrimination filed with the administrative entity that handles Human Rights Act claims. *Id.* However, in this case, the New Mexico Department of Labor's charge of discrimination form only specifically instructs the filer to name the "Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency" that the filer

---

[1] The Court could also grant the motion as a sanction against Plaintiff if *Meade*'s three-part test were satisfied. *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003). Because both dismissal is a "severe sanction reserved for the extreme case" and Defendants have offered no evidence that this is an extreme case, *id.*, the Court refrains from granting dismissal as a sanction.

"[b]elieve[s] [d]iscriminated [a]gainst [him]," and then provides space to list the employer's name and address. There is no such instruction or space provided to list the individuals who the filer believes discriminated against him. Thus, the form provides partial, but incomplete, instructions to filers regarding how to preserve claims under the Human Rights Act.

Therefore, with respect to the Defendants whom Mr. Lobato failed to properly name on the form, this case raises the issue of whether or not the form provides a fair and adequate opportunity to exhaust administrative remedies against individual defendants for claims under the Human Rights Act. Because this is a difficult and dispositive question of state law on which there is no state law precedent, the Court has chosen to certify this question to the New Mexico Supreme Court.

Before proceeding further, the Court must assess whether Mr. Lobato properly "name[d]" and provided the "address" of any of the individuals who allegedly discriminated against him, despite the form's inadequacy. Defendants assume without any explanation that Mr. Lobato failed to "name" any of the individual defendants in his discrimination charge. Because the New Mexico Supreme Court has elsewhere treated failure to exhaust administrative remedies as an affirmative defense, *Lazo v. Board of County Comm'rs*, 690 P.2d 1029, 1031 (N.M. 1984), the Court concludes that Defendants bear the burden to prove that Plaintiff did not in fact exhaust his administrative remedies. This Defendants have not done with respect to two Defendants.

The Court first turns to the plain meaning of providing a "name." Under Black's Law Dictionary, the word "name" is described as "[a] word or phrase identifying or designating a person or thing and distinguishing that person or thing from others." Black's Law Dictionary (9th ed. 2009). Thus, from the definition of this legal term, it is not necessary that an employee specifically list an alleged discriminator's given name or surname. Rather, so long as the employee identifies the person

6

in a way that distinguishes that person from other individuals, the employee has satisfied the naming requirement. *Cf. Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980) (noting that under Title VII, the naming requirement is analyzed "liberally" and the naming requirement is satisfied so long as "the defendant was informally referred to in the body of the charge").

Here, on the first Charge of Discrimination form, Mr. Lobato identified Defendant Bentley by her employment position ("human resources") and Defendant Lundstrom by his employment position ("district manager"). (Doc. 20, Def. Ex. A.) These positions identified these Defendants from other individuals in the Farmington Health Division office. Further, Mr. Lobato provided on each form the address where the Defendants worked ("724 West Animas, Farmington, NM 87401"). Consequently, with respect to Ms. Bentley and Mr. Lundstrom, Defendants have not satisfied their burden of proving that Mr. Lobato did not exhaust his administrative remedies. Therefore, the Court denies in part Defendants' Motion to Dismiss Plaintiff's New Mexico Human Rights Act claims.

With respect to the other defendants (Carlos Romero and Norman Norvelle), the Court finds that Mr. Lobato did fail to name them since they are not identified in any distinct way. If the New Mexico Supreme Court did find that Mr. Lobato did not have an adequate opportunity to exhaust his administrative remedies against these Defendants, the question remains what remedy is appropriate. Since no New Mexico case law establishes the proper remedy when a plaintiff who lacked an adequate opportunity to exhaust administrative remedies failed to exhaust those remedies, the Court has decided to also certify this question to the New Mexico Supreme Court.[2] Because the Court has

---

[2] If Plaintiff wishes to waive his claims against the unnamed Defendants to eliminate the need to certify these issues, Plaintiff may notify the Court within 7 days of the issuance of this opinion.

opted to certify two dispositive questions to the New Mexico Supreme Court, the Court holds in abeyance in part the Motion to Dismiss Plaintiff's New Mexico Human Rights Act claims.

### III.  Assault and Battery Claim against Defendant Norman Norvelle

Defendant Norvelle also argues that Plaintiff's claims that Mr. Norvelle assaulted and battered Plaintiff should be dismissed. Defendant Norvelle argues that he enjoys immunity for his assault and battery of Mr. Lobato under the New Mexico Tort Claims Act (Tort Claims Act). He reasons that the Tort Claims Act only waives immunity for intentional torts committed by law enforcement officers, but not other kinds of public officials. Since Plaintiff nowhere contends that Defendant Norvelle is a law enforcement officer, Mr. Norvelle argues that he enjoys immunity.[3]

Defendant Norvelle is only partially correct in his reading of the Tort Claims Act. The act grants public employees "immunity from liability for any tort" except those waived so long as the employee committed the tort "while acting within the scope of duty." N.M. Stat. Ann. § 41-4-4 (1978). As an affirmative defense, Defendant Norvelle has the burden to show that the alleged assault and battery fell within the scope of his duties within the meaning of the Tort Claims Act. *See Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004). Further, whether an employee is acting within the scope of duty is a fact question, *id.* at 246, so on a motion to dismiss, the Court must find that no set of facts alleged would allow a jury to find that Defendant Norvelle acted outside the scope of his duty in battering Mr. Lobato. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[3] In response to Defendant Norvelle's brief, Plaintiff argues in part that the New Mexico Workers' Compensation Act does not bar tort actions against an employee for torts that one employee willfully commits against another. (Doc. 28, at 4-5.) However, Plaintiff cites no authority to support the proposition that the Workers' Compensation Act abrogates immunity provided under the Tort Claims Act. Absent such authority, this argument is irrelevant to Defendant's claim that the Tort Claims Act provides Defendant Norvelle immunity from suit.

The New Mexico legislature defines "scope of duties" to mean "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. § 41-4-3(G) (1978). The New Mexico Supreme Court has clarified that this can include tortious or criminal actions, if the employee took those actions pursuant to requested or authorized conduct. *Risk Mgmt. Div. v. McBrayer*, 14 P.3d 43, 49 (N.M. 2000). The New Mexico Court of Appeals has found a principal's actions well within the scope of duties where the principal "harass[ed]" the plaintiff only by using procedures that were authorized by the public school, like requiring the plaintiff to watch instructional teaching videos and participate in a professional improvement plan. *Henning v. Rounds*, 171 P.3d 317, 320, 322 (N.M. App. 2007). But the New Mexico Supreme Court also made clear that if any facts would permit a jury to find the employee's conduct unauthorized, a motion to dismiss would be improper. *See Celaya v. Hall*, 85 P.3d 239, 246 (N.M. 2004).

Here, Plaintiff alleges that Defendant Norvelle "physically attacked and injured" Plaintiff. Yet Plaintiff nowhere alleges that (a) Defendant Norvelle committed the attack in furtherance of his official duties, (b) the means used were authorized by any supervisor, or (c) he used his official duties as a ruse to corner Mr. Lobato.[4] Thus, it is reasonable to infer that Defendant Norvelle could

---

[4] Defendant Norvelle points out for the first time in his reply brief that Plaintiff alleged that at all times, Mr. Norvelle acted under color of state law, and therefore Plaintiff implicitly alleged that Mr. Norvelle acted in the scope of his duties. However, in this Circuit, absent exceptional circumstances, courts do not consider arguments raised for the first time in a reply brief. *See Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007); *Taylor v. United Mgmt.*, 51 F. Supp. 2d 1212, 1215 n.2 (D.N.M. 1999). Further, this argument would not have helped Mr. Norvelle even if timely raised. The allegation that Mr. Norvelle acted under color of state law, which implies that Mr. Norvelle acted with *apparent* authorization, does not mean that Mr. Norvelle committed the assault and battery with *actual* government authorization. It is the latter fact that is necessary to show that the assault and battery occurred within the scope of Mr. Norvelle's employment.

have committed this attack outside the scope of his duties. Therefore, this case is unlike *Henning*, in which the defendant used only "available mechanisms of employment," rather than unauthorized force. 171 P.3d at 322. Instead, this case is like *McBrayer*, where the state supreme court found it a fact question whether a teacher who assaulted a student acted within the scope of his duties. 14 P.3d at 45, 49, 51. As such, Defendant Norvelle has not shown that the alleged assault and battery indisputably fell within the scope of his duties. Thus, it would be improper to dismiss this claim.

## IV.  Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Qualified immunity is unavailable where officers have violated a "clearly established" constitutional right of which a "reasonable person" would have known. *See Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002). Qualified immunity involves a two-part test: (a) whether the officer committed a constitutional violation and (b) if so, whether the right was clearly established. *See id; Pearson v. Callahan*, 129 S.Ct. 808 815-16, 818 (2009). Defendants argue that they are entitled to qualified immunity because the facts do not show that Defendants committed any constitutional violation. Plaintiff alleges that Defendants violated his Due Process, Equal Protection, and First Amendment rights through their alleged discriminatory conduct and by allegedly wrongfully firing him. (Doc. 1, at 6-8, 10.) The Court addresses the merits of each claim in turn.

### A.  Due Process Claim

Under the Fourteenth Amendment Due Process Clause, the government may not deprive an individual of a property right without due process of law. *Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009). Plaintiff raises a procedural due process claim in his complaint. In response, Defendant argues that Plaintiff cannot proceed on this claim because he failed to exhaust his

10

administrative remedies. The Court need not analyze whether or not Plaintiff in fact did exhaust his administrative remedies, because to bring a federal due process claim under 42 U.S.C. § 1983, a plaintiff need not exhaust administrative remedies. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500-01 (1982) ("we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies"). Consequently, Defendants' argument regarding failure to exhaust is without merit.

Turning to the requirements under the Due Process Clause, to show a due process violation, a plaintiff must allege that (a) he was deprived of a legally protected liberty or property interest and (b) he was not afforded enough process before a public official took away that interest. *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1121-22 (10th Cir. 2009). The plaintiff must first show that he had a protected property right or liberty interest. *Potts*, 551 F.3d at 1192. To find a property right in employment under the Due Process Clause, the Court assesses whether the plaintiff had a legitimate expectation of continued employment. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Where, under state law, the government employer may only terminate a plaintiff's employment for specified reasons, the plaintiff has a sufficient expectation of continued employment under the Due Process Clause to constitute a cognizable property interest. *Id.*

For purposes of the employment rights of state employees, New Mexico distinguishes between employees and probationers. Employees are persons who have "completed [their] probationary period." N.M. Stat. Ann. §§ 10-9-3I. In contrast, probationers are those who have not yet completed this period, which lasts one year. *Id.* §§ 10-9-3J, 10-9-13(E). A state employee must have completed the one-year probationary period in order to be able to appeal a termination decision to be reviewed for "just cause." N.M. Stat. Ann. § 10-9-18(A),(F); *Clark v. N.M. Children, Youth*

11

*& Families Dep't*, 988 P.2d 888, 891-92 (N.M. App. 1999). Thus, before a recent hire has completed the one-year probationary period, the government employer may fire that employee at any time without a hearing.

Here, Plaintiff alleged that he was hired in December 2007 and fired December 17, 2008. (Doc. 1, at 6, 8.) Plaintiff does not specify the date he was hired. Accepting Plaintiff's facts as true, and drawing the reasonable inference that Plaintiff could have been hired in December before December 17, 2007, Plaintiff has pled facts that indicate he may have worked for the Health Division for over twelve months. Thus, the Court finds that Plaintiff has sufficiently alleged that he was an employee under New Mexico law entitled to "just cause" protection. Consequently, Plaintiff has adequately pled that he had a sufficient expectation of continued employment to qualify as a protected property interest. *See Hennigh*, 155 F.3d at 1253.

However, Plaintiff has made no allegations that would establish that the government did not provide him due process before taking away his job. Consequently, Plaintiff has not provided enough factual matter to make a due process claim plausible. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, the Court grants Defendants motion to dismiss Plaintiff's due process claim without prejudice. Plaintiff may amend his complaint if he can make out the required allegations.

### B. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In the public employment context, this clause "afford[s] protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights*, 503

12

U.S. 115, 119-120 (1992). Specifically, the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008).[5]

To state a claim for an equal protection violation, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of a suspect class. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). Suspect classifications include those based on race, alienage, and national origin. *Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir. 1986).

### 1. Failure to Promote: Facial National Origin Discrimination

Turning first to the failure-to-promote claim, a policy is facially discriminatory if it expressly classifies persons on the basis of race or gender. *Hayden*, 180 F.3d at 48. Where a government official withholds a benefit from or imposes a burden on a plaintiff explicitly "based on [the plaintiff's] race, the [official's] action is analogous to a facial racial classification." *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1449 (9th Cir. 1994); *see also Engquist*, 553 U.S. at 597 ("It is well settled that . . . the [Equal Protection Clause] appl[ies] to administrative as well as legislative acts").

Here, Plaintiff has adequately alleged a facial racial classification. He claims that Defendants violated his Equal Protection rights by discriminating against him on account of his race or national origin in both failing to promote him and subsequently firing him. (Doc. 1, at 10-11) ("Plaintiff claims violation of her [sic] equal protection rights based on her [sic] inclusion in protected classes by virtue of race/ national origin, Hispanic . . . "). Turning first to the promotion claim, Plaintiff, a

---

[5] The applicability of Title VII does not interfere with Plaintiff's right to sue under the Equal Protection Clause. The Tenth Circuit has ruled that "[i]f a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application." *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

hispanic, (Doc. 1, at 5), claims in his complaint that Defendant Lundstrom explicitly commented, "I will not hire a Mexican into a management position," and subsequently hired a non-hispanic with less seniority and experience than Plaintiff. (Doc. 1, at 7.) Thus, Plaintiff adequately claims that a government official withheld a benefit from Plaintiff based solely on his ethnicity. Consequently, Defendant Lundstrom's alleged actions in failing to promote Plaintiff are facially discriminatory.[6] Plaintiff's complaint establishes that Defendant Lundstrom, and also possibly Defendant Bentley, the human resources director, were involved in denying Mr. Lobato's promotion. (Doc. 1, at 6-8.) Since Defendants' actions fail strict scrutiny under this complaint, it would be improper to dismiss Plaintiff's claim for violation of his Equal Protection rights by Defendants Lundstrom and Bentley.

## 2.  *Termination Claim: Disparate Treatment*

Turning next to the termination claim, Plaintiff claims that after he was passed over for promotion, Defendants Carlos Romero and Judy Bentley jointly decided to terminate him also because of his ethnicity or national origin. (*Id.* at 8.) Plaintiff specifically alleged that Defendant Bentley knew that other employees had repeatedly verbally abused Plaintiff and made ethnically derogatory remarks before she decided to fire him. (*Id.* at 6.) He also alleges that Defendants Bentley

---

[6] "In the equal protection context . . . in light of the abhorrent history of race-based classifications, facial racial classifications carry a presumption of bad faith and automatically trigger strict scrutiny regardless of evidence of intent." *Gonzalez-Rivera*, 22 F.3d at 1450; *see also Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) ("all laws that classify citizens on the basis of race . . . are constitutionally suspect and must be strictly scrutinized"); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (recognizing that strict scrutiny applies to facial discrimination against a suspect class); *Thigpen v. Bibb County*, 223 F.3d 1231, 1239-41 (11th Cir. 2000) (noting that where the government makes a facial racial classification in the employment context, strict scrutiny applies). To satisfy strict scrutiny, Defendants must show that the alleged discriminatory actions serve a compelling interest and that these actions were precisely tailored to serve that purpose. *Plyler*, 457 U.S. at 217. Here, in the Government's motion to dismiss, it never suggests any compelling interest in denying hispanic applicants a managerial position.

and Romero consulted with each other before firing him. (*Id.* at 8.) In their defense, Defendants Carlos Romero and Judy Bentley argue that Plaintiff's allegations with respect to them are consistent with lawful conduct, and so under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), are insufficient to state a plausible claim for unconstitutional discrimination. (Doc. 24, at 8.)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint need only state a "short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where the pleaded facts are consistent with both lawful and unlawful behavior, and the lawful behavior is the more likely explanation, the claim is not plausible. *Id.* at 1950. Courts must draw on their "judicial experience and common sense" to assess a claim's plausibility. *Id.* Under *Twombly*, a complaint alleging race or sex discrimination need only allege that the employer undertook a specific adverse employment action against the plaintiff on the basis of race or sex. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

Turning to the Equal Protection Clause standard, for a government employee to establish ethnic discrimination in the workplace based on facially neutral acts, the plaintiff must prove the same elements as required under *McDonnell Douglas* to show disparate treatment under Title VII. *Drake v. Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under . . . [§] 1983 or Title VII."). Under *McDonnell Douglas*, a plaintiff can make a prima facie case of discriminatory failure to promote or termination by showing that: (a) the plaintiff belongs to a racial minority; (b) he was discharged by

the government employer; and (c) similarly situated non-minority employees were treated differently. *See McAlester v. United Air Lines*, 851 F.2d 1249, 1260 (10th Cir. 1988) (*McDonnell Douglas* "establishes the model of proof for an individual disparate treatment case"); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *Tamayo*, the Seventh Circuit found that a plaintiff had pled enough facts under *Twombly* to adequately plead a Title VII sex discrimination complaint where she had alleged that she was a female, her actual salary, the salaries of similarly-situated male co-workers, and her belief that she was paid less in part because of her gender. 526 F.3d at 1085.

Here, to support the claim that Defendants Judy Bentley and Carlos Romero fired Mr. Lobato because of his ethnicity, Plaintiff alleged that (a) he is hispanic (Doc. 1, at 5), (b) he was fired by Defendants Carlos Romero and Judy Bentley for pretextual reasons (*id.* at 8), and (c) non-hispanic employees were treated more favorably (*id.* at 6-7). Plaintiff also alleges that Defendant Bentley knew about the ethnically derogatory comments targeted at Mr. Lobato before she decided to fire him and that she consulted with Defendant Romero before firing Mr. Lobato. (*Id.* at 6, 8.) As in *Tamayo*, these facts suffice to plead a race discrimination claim under the Equal Protection Clause. They make it plausible that Defendants Bentley and Romero were aware of and supported the ethnic discrimination against Mr. Lobato and fired him for this reason. Therefore, the Court must deny the motion to dismiss the Equal Protection claims against Defendants Carlos Romero and Judy Bentley.

### C. First Amendment Claim

Under the First Amendment, applicable to the states by way of the Fourteenth Amendment, public employees retain the right to comment upon matters of public concern. *Connick v. Myers*, 461 U.S. 138, 140 (1983); *Gitlow v. New York*, 268 U.S. 652, 666 (1925). As the Supreme Court has explained, "[speech] concerning public affairs is more than self-expression; it is the essence of self-

16

government." *Connick*, 461 U.S. at 145 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)). Consequently, when an employee speaks as a citizen on matters of public concern, that speech "occupies the 'highest rung of the hierarchy of First Amendment values'" and so merits "special protection." *Id.* (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)).

The First Amendment's free speech provision "protects government employees from termination because of their speech on matters of public concern," if made in the role of a concerned citizen. *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, to prevail the plaintiff must show that (a) the employee's interest in commenting on the issue outweighs the interest of the state as employer and (b) that the plaintiff's speech substantially motivated the defendant's decision to terminate the plaintiff. *Deutsch v. Jordan*, 618 F.3d 1093, 1097-98 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007)).[7] The government can successfully defend against a plaintiff's prima facie showing by proving that it would have taken the same action against the employee even absent the protected speech. *Id.* at 1098.

### 1. Public Concern

To assess whether an employee's speech addresses a matter of public concern, courts look to the content, form, and context of a given statement, as revealed by the whole record. *Connick*, 461 U.S. at 147-48. Matters of public concern are those "relating to any matter of political, social, or

---

[7]Citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007), Plaintiff suggests that the proper First Amendment standard is that: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the plaintiff's speech substantially motivated the defendant's adverse action. However, this standard applies to retaliation against citizens rather than against government employees. *See Perez v. Ellington*, 421 F.3d 1128, 1131-32 (10th Cir. 2005). Thus, it does not apply here.

other concern to the community," *id.* at 146, information "of legitimate news interest . . . and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004); *Deutsch*, 618 F.3d at 1099-1100. Specifically, "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 421; *Deutsch*, 618 F.3d at 1100 ("speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matters of public import").

In some circumstances a plaintiff's EEOC filing reporting discrimination can constitute citizen speech on a matter of public concern. *See David v. City and County of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996); *see also Tyler v. Univ. of Ark. Bd. of Trs.*, No. 10-1251, 2011 U.S. App. LEXIS 173, at *11 (8th Cir. Jan. 6, 2011). In *David*, the Tenth Circuit found that a plaintiff's EEOC complaints did not address matters of public concern where the plaintiff's charges failed to allege "that other employees have been subjected to harassment or retaliation or that the harassment and retaliation has interfered with the Department's performance of its governmental responsibilities." 101 F.3d at 1356; *see also Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 720-21 (6th Cir. 1989) (finding that, because it related only to a personal employment dispute, plaintiff's discrimination charge was not protected by the First Amendment), vacated on other grounds, 497 U.S. 1001 (1990).

Here, unlike in *David*, Mr. Lobato's complaint to the EEOC does implicate the Health Division's "performance of its governmental responsibilities." Mr. Lobato alleged that after he observed that a supervisor in the department was taking bribes, and had reported the bribery internally, his supervisors began making racially discriminatory comments to him. (Doc. 20, Def. Ex. A.) Thus, Mr. Lobato alleged that he suffered discriminatory retaliation directly because of the government's official misconduct and its desire to keep quiet that misconduct. *See Deutsch v.*

18

*Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010) (noting that "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matters of public import"). Consequently, Mr. Lobato's EEOC complaints, which exposed official misconduct linked to his allegedly discriminatory treatment, reported a matter of public concern.

> 2.  *Citizen Speech*

To assess whether an employee spoke out as a citizen, rather than as an employee, courts assess whether the speaker spoke as a matter of official duty, or rather voluntarily out of personal concern. *Garcetti*, 547 U.S. at 421. A court may find that an employee spoke out as a citizen even where the expression was made at work, and involved actions occurring in the workplace. *Id.* at 420, 421 (finding the fact that the plaintiff reported misconduct pursuant to his official duties the "controlling factor" in concluding that the plaintiff spoke as an employee rather than as a citizen). In the Tenth Circuit, courts take a case-by-case approach, looking at both the content of the employee's speech and his audience. *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010). Courts have identified at least two factors that inform whether the employee spoke pursuant to his official duties: (a) whether the employee's job duties related to reporting wrongdoing and (b) whether the employee went outside the chain of command in reporting the wrongdoing. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010).

The Tenth Circuit focuses on whether the speech "stemmed from and [was of] the type . . . that [the employee] was paid to do." *Rohrbough*, 596 F.3d at 746. In *Reinhardt*, the Tenth Circuit found that an employee of Albuquerque public schools spoke as a citizen in part since she "was not hired to ensure" compliance with the rules that she observed her employer had violated. *Id.* at 1136. In contrast, in *Casey*, the Tenth Circuit found that the plaintiff, hired as the Chief Executive Officer

of Head Start for her school district, had an official duty to report misuse of the Head Start funds such that she had acted as an employee rather than as a citizen in reporting misconduct to the school board. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1329, 1331 (10th Cir. 2007).

Here, like in *Reinhardt*, Mr. Lobato was not hired to detect and report bribery and discrimination; rather, he was hired to work as an environmental inspector. Drawing reasonable inferences in favor of Mr. Lobato, he could plausibly prove that he was not expected to report misconduct unrelated to environmental inspection, as both bribery and invidious discrimination clearly are. While Mr. Lobato made the bribery report at work as well as to the EEOC, as the *Garcetti* Court noted, speech may be protected even if it was made at the workplace. *Garcetti*, 547 U.S. at 421. Thus, the first factor weighs in favor of finding that Mr. Lobato spoke as a citizen rather than as an employee.

Further, the Tenth Circuit has repeatedly found that a plaintiff has spoken as a citizen where the employee speaker reported the wrongdoing outside the internal chain of command, turning instead to an independent agency when the plaintiff had no legal duty to report to that agency. *Reinhardt*, 595 F.3d at 1136-37 (collecting cases); *see also Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006); *Davis v. McKinney*, 518 F. 3d 304, 313-14 (5th Cir. 2008) (holding that a plaintiff did not complain to the EEOC pursuant to official duties, but rather as a citizen). Here, Mr. Lobato went outside his employer's chain of command in reporting the bribery and discrimination, using the EEOC as his forum. The fact that Mr. Lobato reached out to an independent agency to report the misconduct, then, also suggests that he spoke as a citizen rather than as an employee.

3.  Pickering *Balance*

Having found that Mr. Lobato's speech reporting discriminatory conduct involved citizen speech on matters of public concern, under *Pickering* the Court must weigh Mr. Lobato's interest in speaking out against the government's interests. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). For Defendants to avoid liability for chilling Plaintiff's speech, they must first show that the restrictions taken were "necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1304 (10th Cir. 2009); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007) ("the employer bears the burden of justifying its regulation of the employee's speech"). The question here is "whether the government's legitimate interests provide a sufficient justification for controlling plaintiff's message." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1327 (10th Cir. 2008). If Defendants cannot show that the way they restricted Plaintiff's speech was necessary to ensure Plaintiff's efficient performance as an employee, Plaintiff's First Amendment interest prevails without any balancing. *Dixon*, 553 F.3d at 1304.

In determining whether the government's restrictions were "necessary," courts consider whether the statement: (a) impaired discipline by superiors or harmony among co-workers; (b) had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; or (c) impeded the performance of the speaker's duties or interfered with the regular operation of the enterprise. *Id.* at 1304; *accord Rankin*, 483 U.S. at 388. In *Casey*, the Tenth Circuit found that the government had not shown that its restrictions on a plaintiff's speech were necessary where the record provided no evidence that the plaintiff's protected statement threatened the work,

morale, or substantive decisions in her office, but rather her speech "sought only compliance with" the law. *Casey v. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1333 (10th Cir 2007).

As in *Casey*, at this stage Defendants have provided no evidence that (a) Mr. Lobato's report of alleged discrimination impaired his supervisors' legitimate ability to discipline him; (b) Mr. Lobato's job required personal loyalty and confidence that made reporting alleged discrimination inappropriate; or (c) Mr. Lobato's report impeded Mr. Lobato's abilities to perform his duties. Nor have Defendants pointed to any evidence in the complaint that Mr. Lobato's report created any actual, undue disruption. *See Finn v. N.M., State Pers. Office*, 249 F.3d 1241, 1249 (10th Cir. 2001) (noting that "defendant has provided no evidence of actual disruptions"). Thus, no evidence adduced here indicates that the failure to promote Mr. Lobato and his ultimate termination served legitimate business concerns.

### 4. Speech as Substantial Motivation for the Termination

Under the fourth prong of the plaintiff's First Amendment retaliation claim, the plaintiff must show that: (1) the plaintiff suffered an adverse employment decision and (2) the protected speech was a "substantial motivating factor" in the employer's adverse employment decision. *Couch v. Bd. of Tr. of the Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1236 (10th Cir. 2009); *see also Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1277 (10th Cir. 2007) (quoting *Maestras v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)).

Under the first part of this test, an "adverse employment action" is an action that would deter a reasonable person from exercising his First Amendment rights. *Couch*, 587 F.3d at 1238. Such actions include termination and failure to promote the plaintiff employee. *Schuler v. City of Boulder*, 189 F.3d 1304, 1309 (10th Cir. 1999) (recognizing retaliation involving "promotion" as adverse

22

employment actions under the First Amendment); *see also Paloni v. City of Albuquerque Police Dep't*, 212 F. App'x 716, 720 (10th Cir. 2006). "Substantial harassment and abuse" also constitutes a potentially adverse employment action. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1208 (10th Cir. 2007).

Here, Mr. Lobato alleges that after he reported the bribery and ethnic discrimination to the EEOC, Defendant Lundstrom, a supervisor, stated that he "[would] not hire a Mexican into a management position" and also remarked, "f___ing Mexicans." (Doc. 1, at 7.) Further, Mr. Lobato alleges that after the report, the Health Division then hired a non-hispanic into the open management position. (*Id.*) Together, drawing reasonable inferences in favor of Plaintiff, these allegations suffice to indicate that the Division intentionally passed over Mr. Lobato for promotion.

Further, Plaintiff alleged that "responsible management officials" were informed when Plaintiff filed his EEOC complaint and that after filing this complaint, his supervisors increasingly harassed him. (*Id.*) Mr. Lobato also claims that after the report, his supervisor ordered him to move heavy items in violation of departmental policy, which caused Mr. Lobato to suffer substantial injury. (*Id.*) These allegations together with reasonable inferences drawn therefrom, suffice to establish substantial harassment and abuse.

Finally, Mr. Lobato alleges that on December 17, five months after filing the EEOC report, after "responsible management officials" had learned of the report (*Id.*), and after several months of harassment, Defendants Judy Bentley and Carlos Romero decided to fire him. (*Id.*, at 8.) Thus, Mr. Lobato's allegations suffice to allege three distinct adverse employment actions: (a) substantial harassment and abuse; (b) failure to promote; and (c) termination. They implicate Defendants Charles Lundstrom, Judy Bentley, and Carlos Romero.

Once a plaintiff has established at least one adverse employment action, the plaintiff need only show that the speech "played a substantial part" in the adverse employment actions. *Id.* "[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive," when coupled with other evidence that the speech motivated the adverse action. *Baca v. Sklar*, 398 F.3d 1210, 1222 (10th Cir. 2005). Other evidence of causation includes that (a) the employer knew of the protected speech, (b) the employer expressed opposition to the plaintiff's speech; or (c) the speech implicated the employer in serious misconduct or wrongdoing. *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). Further, even if there is a time lapse of more than three months between the protected speech and the adverse employment action, "events in the interim might provide sufficient additional support to sustain a causation finding." *Lauck v. Campbell County*, 627 F.3d 805 (10th Cir. 2010) (table). The Court below analyzes the causal links for each of the three adverse employment actions individually.

Turning first to the alleged harassment and abuse, Plaintiff has alleged that the harassment increased shortly after Mr. Lobato filed the EEOC complaint. That allegation, coupled with the fact that the speech implicated the Division in serious wrongdoing (bribery and invidious discrimination), sufficiently alleges that Mr. Lobato's report played a substantial part in the harassment by his supervisors.

Turning next to the alleged failure to promote, Plaintiff claimed in his complaint that shortly after reporting the bribery and ethnic discrimination to the EEOC, Defendant Lundstrom stated that he "[would] not hire a Mexican into a management position." (Doc. 1, at 7.) Further, Mr. Lobato alleges that after the report, the Health Division then hired a non-hispanic into the open management position. (*Id.*) The allegations of close temporal proximity between the EEOC report and Defendant

24

Lundstrom's statement, coupled with the fact that Mr. Lobato's report implicated Defendant Lundstrom specifically in wrongdoing (invidious discrimination), suffice to make out a claim that Mr. Lobato's report played a substantial part in the Health Division's failure to promote him.

Finally, Mr. Lobato alleges that after he filed the EEOC report in July, the Health Division fired him in December. Because more than three months passed, Plaintiff must provide evidence that "events in the interim" support a causal link. *Lauck*, 627 F.3d 805. Here, Plaintiff has done so. He alleged that shortly after he filed the EEOC report, his supervisors began to harass him. Subsequently, Defendant Lundstrom declared that he "[would] not hire a Mexican into a management position." (Doc. 1, at 7.) Additionally, Plaintiff alleges that after this statement, a non-hispanic was hired into the open management position. (*Id.*) These intervening events support a causal connection between the EEOC report and the termination, because they show an increased build-up of retaliatory conduct targeted at Plaintiff after he filed the EEOC report, culminating in Mr. Lobato's ultimate termination. The allegation of a sustained flow of increasingly serious retaliatory conduct beginning shortly after Mr. Lobato filed his EEOC report sufficiently  alleges that Mr. Lobato's report played a substantial part in the Division's ultimate decision to fire him.

Thus, Plaintiff has sufficiently alleged against Defendants Charles Lundstrom, Judy Bentley, and Carlos Romero a prima facie claim of retaliation in violation of his First Amendment rights.[8] Therefore, the Court denies Defendants' motion to dismiss for qualified immunity on Plaintiff's First Amendment claim.

---

[8] Defendants have offered no facts to establish a *Mt. Healthy* defense. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

### D.  Claims Against Remaining Defendants

Finally, Defendants request dismissal of constitutional claims against Defendants Salomon Romero, John Rhoderick, David Torres, and Norman Norvelle. (Doc. 24, at 6.) As none of Plaintiff's allegations relate to these four defendants, Defendants' motion to dismiss constitutional claims against these defendants is proper, and is therefore granted.

## V.  Punitive Damages

Defendant lastly argues that Plaintiff's claim for punitive damages should be dismissed because Plaintiff's "Section 1983 claims against the individuals fail." (Doc. 24, at 10.) However, as the Court has found that Plaintiff's constitutional claims against several individual defendants survive the motion to dismiss, Plaintiff's claim for punitive damages stands.


Dated: March 21, 2011

**BRUCE D. BLACK**
**UNITED STATES DISTRICT JUDGE**