IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

**MICHAEL L. LOBATO**,

    Plaintiff,

    v.                                                    Civ. No. 09-1203 BB/ACT

**STATE OF NEW MEXICO ENVIRONMENT
DEPARTMENT, ENVIRONMENTAL
HEALTH DIVISION, CARLOS ROMERO,
CHARLES LUNDSTROM, SOLOMON
ROMERO, JOHN RHODERICK, DAVID
TORRES, NORMAN NORVELLE and JUDY
BENTLEY,**

    Defendants.

**MEMORANDUM OPINION**

    Plaintiff Michael L. Lobato has filed a Motion for Leave to Amend Complaint, [doc. 91], to include a claim for violation of the New Mexico Whistleblower Protection Act ("WPA"), NMSA 1978, § 10-16C-1.  Defendants oppose the amendment, [doc. 97], and bring their own Motion for Partial Summary Judgment.  Doc. 83.  Having considered the briefs and relevant caselaw, the Court will rule as follows.

**Factual Background**

    **Employment History:** The following facts are as alleged in the Original Complaint. Doc. 1.  Plaintiff was employed by the State of New Mexico Environment Department ("NMED") as an inspector.  At some point in 2008, Plaintiff observed irregularities in the permitting process, including the alleged acceptance of bribes and other illegal activity.

Concerned, Plaintiff reported these permitting irregularities to various members of management, including Charles Lundstrom, Linnie McClellan, Edrynn Mestas,[1] and Judy Bentley.

After making these reports, Plaintiff allegedly began to experience workplace harassment in the form of racial discrimination.  Among other things, Plaintiff was subjected to threats against his employment, derogatory remarks about Hispanics, and verbal abuse.  For example, he was referred to as a "f***ing Mexican" and called a "whistleblower" due to his reporting of illegal activity to management.  Doc. 1, ¶¶ 25, 30.

Approximately eight and a half months after he was hired by the NMED, Plaintiff filed an injury report with the New Mexico Workers' Compensation Administration.  Plaintiff explained that he "felt a tugging in the groin while lifting box[es] during [an] office move."  Doc. 83, Ex. B.1.  Charlene Urban, a claims adjuster for the Workers' Compensation Administration, was assigned to Plaintiff's case.  She explained to Plaintiff that his claim had been accepted by the Administration, that all his medical expenses would be paid for, and that he would receive Temporary Total Disability ("TTDC") compensation for two-thirds of his salary.  Doc. 83, Ex. B.4.

After surgery, Plaintiff was cleared to return to work by Dr. Dennis J. Robinson.  Doc. 83, Ex. B.6.  However, during an altercation with his boss, Norman Norvelle, Plaintiff apparently reaggravated his prior injury.  *Id.*  He thus visited Dr. Robinson again on December 8, 2008, for a reevaluation.  Dr. Robinson asked Plaintiff to refrain from working for a week, but cleared him to return-to-work on December 15 after a week of rest.  *Id.*  Plaintiff was terminated by NMED on December 17, 2008.

---

[1] Both parties failed to mention that Edrynn Mestas filed her own complaint against the NMED alleging employment discrimination and retaliation.  Case 1:09-cv-01172 (filed 12/05/11).  That case was before Judge William P. Johnson and has since settled.

Sometime after his termination from the NMED, Plaintiff discussed returning to work with his own physician, Dr. Kumar. Doc. 110. Ex. 1, p. 176. Plaintiff did not, however, submit a return to work form to the NMED. Rather, Plaintiff allegedly pursued an internship with a company called Envirotech. Doc. 110, Ex. 1, p. 46. That internship turned into a full-time paid position from sometime in 2009 to the summer of 2010. *Id.* at p.4. Plaintiff has submitted his W-2 forms for 2009 and 2010 to substantiate his employment with Envirotech. *Id.* at Exs. 2 & 3. Thereafter Plaintiff was hired by MBF Services as a safety consultant. During this entire time, Plaintiff received and continues to receive TTDC for his injury at the NMED.

**Original Complaint**: Approximately a year after his termination, Plaintiff filed this employment discrimination lawsuit against the NMED and several supervisors and co-employees. Doc. 1. Plaintiff alleges wrongful discharge on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, the First Amendment, and the New Mexico Human Rights Act ("NMHRA"). With respect to these claims, Plaintiff seeks damages for lost wages. Plaintiff also alleges violations of the Equal Protection Clause of the Fourteenth Amendment and a state law claim for battery against Norvelle.

The Court has granted one dispositive motion in this matter. On March 21, 2011, this Court concluded that Plaintiff's claims against the individual defendants under Title VII could not survive Defendants' motion to dismiss. Doc. 42. The Court also dismissed Plaintiff's due process claim as well as his constitutional claims against the individual Defendants Salomon Romero, John Rhoderick, David Torres, and Normal Norvelle. *Id.* Finally, the Court certified two questions to the New Mexico Supreme Court regarding exhaustion of remedies under the NMHRA. *Id*

The case was stayed pending the New Mexico Supreme Court's ruling on the two questions certified by this Court. Shortly after the stay was lifted, Plaintiff's counsel, Dennis Montoya, was suspended from practice. Because Plaintiff's second counsel, Santiago Juarez,

was allegedly uncooperative, Plaintiff filed a motion to substitute counsel in September 2011. The Court granted the motion on September 26. Ten days later, counsel moved for leave to amend the Original Complaint to add a claim under the WPA. Doc. 91.

## Analysis

### I. Leave to Amend under Rule 15(a)

Rule 15(a) provides that leave to amend "should be freely given when justice so requires." Fed. R. Civ. P. 15(a). The purpose of the Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Leave to amend is freely given unless there is a showing of: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Defendants argue that amendment should not be granted due to undue delay on the part of Plaintiff, undue prejudice to Defendants, or futility of the amendment.[2]

### A. Undue Delay

In *Foman*, the Supreme Court listed "undue delay" as one of the justifications for denying a motion for leave to amend. 371 U.S. at 182. Thus, if there has been undue delay on the part of the plaintiff in raising a claim, the district court may properly deny leave to amend as untimely. *Id.*; *see also Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994). In determining whether a delay was undue, the Tenth Circuit "focuses primarily on the reasons for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).

---

[2] Defendants do not argue bad faith or repeated failures to cure deficiencies by amendments previously allowed. Hence, the Court need not address either of those two *Foman* factors in assessing whether to grant or deny Plaintiff's motion to amend. 371 U.S. at 182.

Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993). For example, in *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006), the Tenth Circuit affirmed the district court's denial of leave to amend where "[t]he plaintiffs offer[ed] no explanation for their 14-month delay other than the dubious assertion that until the district court's ruling at the pre-trial conference, they had no idea an amendment was necessary." *Id.* at 1285 (internal quotation marks and brackets omitted). By contrast, the Tenth Circuit concluded in *Minter*, 451 F.3d at 1207, that the district court erred in striking as untimely an amended claim when the plaintiff gave "an excusable cause for the delay" in bringing a claim.

In the instant case, the Plaintiff had knowledge of his WPA claim for a substantial length of time. The Original Complaint was filed on December 28, 2009 – over two years ago – and included claims for retaliation under Title VII of the Civil Rights Act, the First Amendment, and the NMHRA. Subsequently, in May of 2010, the WPA was enacted and went into effect. At that point, Plaintiff knew or should have known of the existence of his claim under the WPA. Nonetheless, he delayed almost 18 months before he filed the instant motion requesting leave to amend his complaint to add a WPA claim. Given this substantial delay, the crucial issue for the Court is whether Plaintiff has a valid reason for the delay. *Minter*, 451 F.2d at 1206; *see also Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979) ("[W]here, as here, a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay.") (internal quotation marks omitted).

The Plaintiff has articulated an excusable cause for not bringing his WPA claim earlier – severe problems with his previous two attorneys. Plaintiff's first attorney, Dennis Montoya, was the subject of attorney discipline proceedings by the State Bar of New Mexico and was suspended from practicing in state and federal court. Plaintiff's subsequent counsel, Santiago

5

Juarez, who took over Mr. Montoya's practice, allegedly missed deadlines and failed to respond to Plaintiff's inquiries about this case.  Accordingly, Plaintiff filed and was granted a motion to substitute counsel on September 26, 2011.  S*ee* Doc. 88.  Promptly thereafter, Plaintiff filed the instant motion to amend his complaint to add a claim under the WPA, demonstrating proper diligence.  Doc. 91 (filed October 6, 2011).  This is not therefore a case where "the party filing the motion has no adequate explanation for the delay."  *Frank*, 3 F.3d at 1365-66.  To the contrary, Plaintiff's severe problems with his prior attorneys – problems that are not disputed by Defendants[3] – present an adequate reason for the delay.

      Alternatively, Defendants argue that leave to amend is inappropriate because Plaintiff seeks "to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings."  *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998).  This case is, however, distinct from *Viernow* where the district court denied leave to amend.  There, the plaintiff sought to amend 19 months after filing his initial complaint and only after the trial court orally granted the defendants' motion for summary judgment.  *Id.*  What is more, the plaintiff in *Viernow* sought to add an entirely new theory of recovery.  *Id.*  By contrast, here, Plaintiff contended in his Original Complaint that Defendants retaliated against him due, in part, to his conduct as a "whistleblower" and the fact that he filed a complaint with the Workers' Compensation Administration.  In this light, Plaintiff's proposed amendment to add a WPA claim does not introduce "a new theory of recovery," *id.*, but rather tracks the facts already alleged in the Original Complaint.  Furthermore, Plaintiff's amendment is not an attempt to salvage a lost case.  In its prior ruling, the Court concluded that Plaintiff has adequately stated a claim for violations of the NMHRA, the First Amendment, and the Equal

---

[3] Indeed, Defendants suggest that Plaintiff pursue a malpractice claim against his prior attorneys.

Protection Clause. Doc. 43. Accordingly, this case was not "essentially over" when Plaintiff filed the instant motion to amend. *Viernow*, 157 F.3d at 800.

For these reasons, the Court does not find that there are sufficient grounds for denial of leave to amend based solely on undue and unexplained delay.

**B. Prejudice to the Defendants**

The second, and most important, factor in deciding a motion to amend the pleadings is whether the amendment would prejudice the nonmoving party. Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." *Minter*, *supra*, 451 F.3d at 1208. "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (citations omitted). The party opposing amendment has the burden of showing some specific way in which it will be prejudiced. *Phelps v. Hamilton*, 166 F.R.D. 489, 491 (D. Kan. 1996).

In the instant case, Defendants argue that the amended complaint alleges new factual issues and thus will significantly and detrimentally prejudice the Defendants. In particular, Defendants complain that the new allegations regarding Plaintiff's role as a "whistleblower" transform this case into an "entirely new lawsuit." As a result, Defendants insist that they will have to "revisit all earlier discovery," a burdensome requirement given that there were only two months of discovery remaining at the time Plaintiff sought leave to amend.

Defendants have failed to satisfy their burden of establishing prejudice. First, the new factual allegations in the proposed Amended Complaint will not transform this into an entirely new case. To be clear, Plaintiff's Original Complaint already included factual allegations regarding Plaintiff's role as a "whistleblower." Doc. 1, ¶¶ 23-25. Thus, while the proposed Amended Complaint does expand on Plaintiff's role as a whistleblower, Doc. 91, Ex. 1, ¶¶ 10-11, 15-18, these additional allegations fall within the scope of the allegations in the Original

Complaint. Doc. 1, ¶¶ 23-25. In this light, the Court fails to find support for Defendants' claim that they will suffer prejudice due to the need to defend an entirely new lawsuit. *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims"); *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"); *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751-52 (10th Cir. 1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues").

The Court is equally unpersuaded by Defendants' argument that they will have to revisit all earlier discovery. Defendants had not yet deposed Plaintiff as of October 6, 2011 – the date when Plaintiff requested leave to amend the complaint. Moreover, as of October 6, 2011, there were still almost two months remaining for discovery under the proposed schedule. *See* Doc. 83 (extending discovery deadline until November 30, 2011). Within this time frame, Defendants deposed Plaintiff with full notice of Plaintiff's request to amend the Complaint to add a WPA claim. Since then, Defendants have not sought to re-depose the Plaintiff or depose any additional witnesses. This conduct or lack thereof belies Defendants' claim that they need to revisit all prior discovery. Finally, Defendants still have adequate time to file substantive motions in response to Plaintiff's WPA claim.[4]

Therefore, the Court finds that there is not sufficient prejudice to Defendants to justify a denial of Plaintiff's motion for leave to amend.

---

[4] Twelve days after Plaintiff's request for leave to amend, the parties agreed to extend the substantive motions deadline until January 30, 2012. Doc. 94 (filed October 18, 2011). The substantive motions deadline has since been extended until thirty days from this Court's ruling on Plaintiff's Motion for Leave to Amend the Complaint. Doc. 119.

**C. Futility**

Leave to amend a complaint may be refused if the amendment would be futile. *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

Defendants do not challenge Plaintiff's assertion that the proposed Amended Complaint relates back to the filing date of the Original Complaint for the purpose of satisfying the WPA's two-year statute of limitations. *See* Fed. R. Civ. P. 15(c)(1)(B).[5] Rather, Defendants argue that the majority of the activity protected by the WPA – namely Plaintiff's whistleblowing activities – took place before July 1, 2008, the operative date of the statute. Defendants further argue that retroactive application of the WPA to the events in this lawsuit violates the Ex Post Facto Clause of the Constitution, U.S. Const. Art. I, § 9, cl. 3. For these two reasons, Defendants argue that amendment would be futile and thus should be denied.

**1. Applicable Conduct.** Although the WPA does not expressly contain a retroactive application clause, House Bill 165 provides that "[t]he provisions of this act apply only to civil actions for damages resulting from retaliatory action that occurred on or after July 1, 2008." 2010 New Mexico Laws, Ch. 12 (H.B. 165), § 7. The key issue then is whether the "retaliatory action" in this case occurred on or after July 1, 2008. According to the proposed Amended

---

[5] An amendment which changes the legal theory on which an action was brought will relate back if the factual situation out of which the action arises remains the same and has been brought to the defendant's attention through the original pleading. *Southern Colorado Prestress Co. v. Occupational Safety and Health Review*, 586 F.2d 1342 (10th Cir. 1978). As noted previously, Plaintiff's amended claim under the WPA arises out of substantially the same set of facts pleaded in the Original Complaint.

Complaint, the retaliatory action in this case culminated with Plaintiff's termination on December 17, 2008. This action clearly falls within the operative time frame of the WPA.

**2. Ex Post Facto Clause.** The Court must engage in a two-part analysis to determine whether the retroactive application of the WPA to the conduct in this case violates the Ex Post Facto Clause. *Smith v. Doe*, 538 U.S. 84, 92 (2003). First, the Court must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Id.* (quotations omitted). Second, if the New Mexico Legislature intended to "enact a regulatory scheme that is civil and nonpunitive, [the Court] must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the legislature's] intention' to deem it 'civil.'" *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980)). Throughout this analysis, the Court must keep in mind that "'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

The first issue is whether the New Mexico Legislature intended to impose punishment when it passed the WPA. The WPA is codified under a civil title, not a criminal title; it applies in the employment context; and it provides employees with a right to a civil action for damages resulting from retaliatory action. *See* NMSA 1968, §§ 10-16C-2, - 4. These observations support the conclusion that the New Mexico Legislature did not intend for the WPA to be punitive, let alone impose criminal penalties. Nonetheless, Defendants argue that the WPA is punitive on its face: it provides a right to recover "two times the amount of back pay with interest on the back pay" in section 10-16C-4(A). Defendants, however, have failed to provide the "clearest of proof" that the New Mexico Legislature enacted the WPA's double-back-pay provision for the purpose of punishment. In the absence of such proof, the Court will defer to the legislature's stated intent of establishing a civil right of action to recover monetary damages. *Smith*, 538 U.S. at 92 (explaining that courts "ordinarily defer to the legislature's stated intent").

The second issue then is whether the WPA is so punitive in purpose or effect as to overcome the legislature's civil intent. *State v. Kirby*, 70 P.3d 772, 778-79 (N.M. App. 2003). In this analysis, the Court considers the seven factors set forth in *Kennedy v. Mendoza-Martinez*:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether operation of the sanction will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assigned to the sanction; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned.

372 U.S. 144, 168-69 (1963). These seven factors are neither exhaustive nor dispositive, but they do provide a useful framework for the Court's analysis of the WPA. *Smith*, 538 U.S. at 97.

*First*: Defendants omit any argument that the WPA is punitive based on the first *Kennedy* factor. They wisely do so: the WPA does not impose "an affirmative disability or restraint." Consequently, this factor weighs against a finding that the WPA is punitive.

*Second*: the Tenth Circuit has not historically viewed monetary penalties, like those imposed by the WPA, as punishment. *Simpson v. Bouker*, 249 F.3d 1204, 1213 (10th Cir. 2001) ("courts have not historically viewed monetary penalties as punishment"). Again then, this factor weighs against a finding that the WPA is punitive.

*Third*: the statute does impose a finding of scienter. While the statute does not expressly include the term "knowing," it prohibits employees from "tak[ing] any retaliatory action against a public employee because the public employee" engages in whistleblower activity. NMSA 1978, § 10-16C-3. The term "because" infers knowledge or motivation. That is, damages under the WPA are only appropriate if the employer "knowingly" retaliated against a government employee. This scienter requirement supports Defendants' argument that the WPA is punitive.

*Fourth*: The fourth *Kennedy* factor cuts both ways. Defendants argue that the WPA imposes damages in the form of double back pay to deter violations; necessarily then, Defendants

11

claim that the statute is punitive in nature. The Supreme Court, however, has cautioned against such an elementary line of reasoning, explaining that a sanction's deterrent effect does not necessarily mean that it must be classified as criminal. *See United States v. Ursery*, 518 U.S. 267, 292 (1996) ("[T]hough [these] statutes may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals."); *see also Hudson*, 522 U.S. at 105 (noting that deterrence serves both civil and criminal goals). Thus, although the WPA's remedial provision does have a deterrent effect, that does not necessarily lead the Court to conclude that the statute must be classified as punitive.

*Fifth*: Defendants fail to argue that the conduct prohibited by the WPA is already a crime. This *Kennedy* factor, like the first and second factors, thus weighs against a finding that the WPA is punitive.

*Sixth*: section 10-16C-4(A) is formulated to compensate employees for retaliatory action. On its face, the statute provides recovery for "actual damages", "reinstatement", and "back pay." § 10-16C-4(A). Notably, there is no mention of "exemplary" or "punitive" damages within this section. Hence, the statute is rationally tied to its alternate purpose of compensating victims of workplace retaliation. As a result, this sixth *Kennedy* factor weights against a finding that the statute is punitive.

*Seventh*: the monetary penalties imposed by the WPA are not so excessive in relation to the statute's purported compensatory purpose. All in, section 10-16C-4(A) provides a right to recover actual damages, reinstatement, double back pay with interest, compensation for any special damages sustained as a result of the violation, and litigation costs and reasonable attorney fees. Defendants pinpoint the double back pay award and argue that it is excessive in relation to the statute's compensatory purpose. The Court disagrees for three reasons: first, section 10-16C-4(A) only imposes double back pay, not the more problematic treble damages provision disfavored by the U.S. Supreme Court. *Cf. United States ex rel. Marcus v. Hess*, 317 U.S. 537,

550 (1943) (noting that double damages in original FCA were not punitive, but suggesting that treble damages, such as those in the antitrust laws, would have been).  Second, there is no evidence that the New Mexico Legislature intended the double-back-pay awards to be punitive. To the contrary, double back pay could be viewed as a mechanism to compensate employees for all the costs incurred as a result of a retaliatory discharge – costs that include not only lost wages but also the cost and inconvenience of searching for a new job or moving costs.  Finally, double back pay is not excessive in comparison to the statute's compensatory components, including actual damages, reinstatement, compensation for special damages, and attorney fees and costs. Accordingly, this seventh *Kennedy* factor counsels against a finding that the statute is punitive.

Considering the *Kennedy* factors in their entirety, the Court concludes that the WPA is a compensatory, not punitive, statute.  That is, application of the *Kennedy* factors fails to achieve the "clearest proof" standard under *Hudson* to transform the WPA into a criminal penalty whose retroactive effect would violate the Ex Post Facto Clause.  Thus, the Court cannot conclude that the amendment in this case is futile.

Because none of the five *Foman* factors are present, the Court will grant Plaintiff leave to amend.

## II. Defendants' Motion for Partial Summary Judgment

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).  To avoid summary judgment, the non-moving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of

each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587. The Court will address Defendants' motion with this standard in mind.

**A. New Mexico Workers' Compensation Act**

Defendants set forth the following three-step argument. First, Defendants argue that the New Mexico Workers' Compensation Act ("WCA") provides the exclusive remedy for all injuries occurring within the scope of employment. *See* NMSA 1978, § 52-1-9 (1973). Defendants then explain that Plaintiff is currently receiving workers compensation for injuries he suffered while lifting heavy boxes on the job. From this, Defendants leap to the conclusion that the WCA's exclusivity provision bars Plaintiff's claims for lost wages due to employment discrimination under Title VII, the First Amendment, and the NMHRA.

To begin, the Supremacy Clause and basic principles of federalism readily disposes of the argument that the WCA bars Plaintiff's claims arising under Title VII. *See Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1105 (10th Cir. 1998) (holding that Colorado's Workers' Compensation Act did not bar recovery for work-related injuries cognizable under Title VII). For the same reasons, Plaintiff's employment claims based on the First Amendment of the United States Constitution are not preempted by the exclusivity provision of the WCA. *Wasson v. Sonoma County Jr. College Dist.*, 4 F.Supp.2d 893, 909 (N.D. Cal. 1997).

Moving on, the WCA's exclusivity provision is not a bar to Plaintiff's employment discrimination claim under the NMHRA. "The WCA only covers work-related accidents and only injuries that fall within the act's coverage." *Coates v. Wal-Mart Stores, Inc.*, 976 P.2d 999, 1004 (N.M. 1999). The New Mexico Supreme Court has made it abundantly clear that "[i]njuries caused by sexual harassment do not arise out of employment." *Id.*; *see also Michaels*

*v. Anglo-American Auto Auctions, Inc.*, 869 P.2d 279, 280-82 (N.M. 1994); *Cox v. Chino Mines/Phelps Dodge*, 850 P.2d 1038, 1041-42 (N.M. App. 1993). The *Coates* Court further stressed that "sexual harassment is not an 'accident' that invokes WCA coverage . . . but rather is a form of discrimination, which as a matter of public policy is not accepted in society." *Id.* at 1005. Accordingly, the court held that the plaintiff could pursue a sexual harassment claim against her employer, Wal-Mart. *Id.*; *see also Sabella v. Manor Care, Inc.*, 915 P.2d 901, 905 (N.M. 1996).

    *Coates* applies with equal force to the instant case involving racial discrimination – a form of discrimination that, like sexual harassment, is not accepted by society. The Court thus refuses to categorize racial discrimination as a mere "accident" arising out of employment that is only compensable under the WCA. In so refusing, the Court gives meaning to the distinct purposes set forth in the NMHRA and the WCA. Where the NMHRA "was enacted in 1969 to eliminate 'unlawful discriminatory practice' based on 'race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or medical condition[,]'" *Sabella*, 915 P.2d at 905 (quoting § 28-1-7(A), NMSA 1978), the WCA "was enacted as a response to the ever-increasing number of industrial injuries and the insufficient remedies available to injured workers." *Id.* Thus, the Court firmly concludes that Plaintiff's claim for racial discrimination under the NMHRA is not barred as a matter of law by the WCA's exclusivity provision. *Id.* ("an action under the NMHRA for sex discrimination cannot be barred by the WCA as a matter of course.").

    To conclude otherwise would lead to an absurd result. That is, if the WCA was the exclusive remedy, as Defendants contend, employers would be immunized from liability for employment discrimination claims brought by an employee receiving workers' compensation. Such a result would thwart the NMHRA, improperly equate discrimination with a work place accident, and expand the WCA beyond its purpose of compensating employees for industrial injuries.

**B. Back Pay**

Alternatively, Defendants argue that any claim for lost wages resulting from Plaintiff's Title VII and NMHRA claims should be dismissed because Plaintiff was not "ready, willing, and able" to return to work. Doc. 83, p. 4 (quoting *Jackson v. Dillard's Dep't Stores, Inc.*, 92 Fed. Appx. 583, 585 (10th Cir. 2003) (unpublished)).

To begin with, both parties agree that a Title VII plaintiff cannot recover back pay unless the plaintiff was "ready, willing, and able to return to work." *Jackson*, 92 Fed. Appx. at 585 n. 3 (quoting *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267-68 (10th Cir. 1975)). Based on this principle, courts have held that a plaintiff may not recover back pay for periods where the plaintiff was unavailable to work due to physical disability. *See Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985); *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 833 (9th Cir. 2004) (equating physical inability to work to removal from labor market); *EEOC v. Indep. Stave*, 754 F.Supp. 713, 721 (E.D. Mo. 1991) (holding that plaintiff could not recover backpay where physical injury prevented her from working at alternate job for purposes of mitigating damages); *Martin v. Dep't of Air Force*, 184 F.3d 1366, 1367-68 (Fed. Cir. 1999) (plaintiff not entitled to backpay for period of time he was physically unable to do physical tasks required by his work); *but see Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) ("[A] Title VII claimant is entitled to an award of back pay where the defendant's discriminatory conduct caused the disability."). The issue faced by this Court is whether Plaintiff was ready, willing and able to return to work, and thus entitled to lost wages under Title VII.

Defendants urge this Court to conclude that Plaintiff was not able to return to work as a matter of law. First, Defendants emphasize the fact that Plaintiff receives and continues to receive TTDC. Such compensation is only available where a worker establishes "(1) complete inability to perform the usual tasks in the work he was performing at the time of the injury; and (2) absolute inability to perform any work for which he is fitted by age, education, training and

previous experience." *Amos v. Gilbert Western Corp.*, 103 N.M. 631, 635 (N.M. App. 1985). Based on this standard and Plaintiff's receipt of TTDC, Defendants conclude that he must have been completely unable to perform any work.

This argument, while initially appealing, overlooks the text of NMSA 1978, § 52-1-25.1(A). Specifically, the statute provides that a worker is entitled to TTDC until the worker achieves "maximum medical improvement." NMSA 1978, § 52-1-25.1(A). Pending maximum medical improvement then, a worker may continue to receive TTDC from a prior employer even though the worker may have already returned to work with a subsequent employer. *See, e.g.*, *Grubelnik v. Four-Four, Inc.*, 29 P.3d 533 (N.M. App. 2001). Thus, even though Plaintiff continues to receive TTDC in the instant case, that alone does not mean that he was not ready to return to work as a matter of law.[6]

Moreover, the evidence appears to demonstrate that the Plaintiff did in fact return to work. He claims that he returned to work for a company called Envirotech on a full-time basis from sometime in 2009 into the summer of 2010. Doc. 110, Ex. A, pp. 49-50. He further alleges that he was subsequently hired by MBF Services on a contract basis, and remains employed by MBF Services. Doc. 110, Ex. A, pp.51-52.[7] Viewing this evidence in the light

---

[6] It should be noted, however, that double recovery is prohibited as a matter of law in New Mexico. *Montoya v. AKAL Sec., Inc.*, 114 N.M. 354, 357 (N.M 1992). Thus, if the Plaintiff ultimately prevails on his claims under the NMHRA, he bears the burden of demonstrating that his damages under the NMHRA are distinct and separate from those damages for which he has already been compensated under the WCA. *See Sabella*, 916 P.2d at 906. At this point in the proceedings, however, the Court expresses no opinion on this issue.

[7] Defendants claim that Plaintiff has failed to substantiate his work at Envirotech of MBF Services. However, Plaintiff submitted two W-2 Forms demonstrating that he earned income in 2009 and 2010. See Doc. 110, Exs. A & B. These W-2 Forms are not disputed by Defendants and substantiate Plaintiff's employment during those two years.

most favorable to the Plaintiff, the Court is unable to conclude that he was unable to return to work.[8]

Alternatively, Defendants argue that Plaintiff was not cleared to return to work by his physician and thus was not "ready, willing, and able to return to work" at the NMED.  The Court disagrees for two reasons.  First, *Jackson* does not explicitly hold that a worker must be medically cleared by a physician in order to be deemed "ready, willing, and able to return to work."[9]  Second, to the extent such a requirement can be read into the case, Plaintiff alleges that he did just that – he discussed returning to work with his physician, Dr. Kumar.  Doc. 110. Ex. A, p. 176.  Plaintiff further claims that Dr. Kumar cleared him to return to work, albeit with a medical restriction to refrain from lifting more than 15 pounds.  *Id.*  Viewing this evidence in the light most favorable to the Plaintiff, *see Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), the Court is unable to conclude at this stage of the proceedings that Plaintiff was medically unable to return to work.

Even if Dr. Kumar did clear Plaintiff to return to work, Defendants argue that Plaintiff failed to provide the NMED with a "return to work" form.  Due to this oversight, Defendants claim that Plaintiff was de facto unable to return to work with the NMED.  This argument, however, ignores the fact that Plaintiff was dismissed from the NMED on December 17, 2008.

---

[8] If Defendants are held liable for employment discrimination, they may be entitled to mitigate damages by the amount Plaintiff earned in the interim.  *Smith v. FDC Corp.*, 787 P.2d 433, 440 (N.M. 1990) ("the court must mitigate damages if there is evidence supporting such a determination").

[9] Even though the plaintiff in *Jackson* "unequivocally testified that she had been medically unable to return to work at any job", that alone did not end the Tenth Circuit's analysis of whether she was "ready, willing, and able to return to work."  The Tenth Circuit also focused on the fact that the plaintiff "remained entirely out of the job market" and failed to accept "any occupation, even one involving only light duties."  *Jackson*, 92 Fed. Appx. at 586-87.  Ultimately then, the analysis in *Jackson* appeared to turn on the fact that the plaintiff had failed to return to any work, not just the fact that she was not medically cleared to return to full employment.

Thereafter, he was no longer employed by the NMED. It would be anomalous indeed to require Plaintiff to submit a return to work form for a position at the NMED – a position he no longer had. Instead, Plaintiff sought and allegedly obtained employment with another firm, Envirotech. His return to work did not therefore depend on submitting a return to work form to the NMED. Accordingly, the Court concludes that the Defendants have failed to demonstrate that Plaintiff was unable to work as a matter of law. To the contrary, the evidence viewed in the light most favorable to the Plaintiff suggests that he was ready, willing, and able to return to work.

## Conclusion

For the foregoing reasons, the Court GRANTS the Plaintiff's motion for leave to amend, but DENIES Defendants' motion for partial summary judgment. The Court further recommends the matter to the consideration of U.S. Magistrate Judge Alan C. Torgerson, if the parties desire any additional discovery or adjustment of the case deadlines as a result of the Court's ruling.

Dated this 15th day of February, 2012.

**BRUCE D. BLACK**
United States District Judge