## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**MICHAEL L. LOBATO**,

     Plaintiff,

     v.                                                                     Civ. No. 09-1203 BB/ACT

**STATE OF NEW MEXICO ENVIRONMENT
DEPARTMENT, ENVIRONMENTAL
HEALTH DIVISION, CARLOS ROMERO,
CHARLES LUNDSTROM, SOLOMON
ROMERO, JOHN RHODERICK, DAVID
TORRES, NORMAN NORVELLE and JUDY
BENTLEY,**

     Defendants.


## <u>MEMORANDUM OPINION</u>

On December 28, 2009, Michael Lobato, a former probationary employee with the New

Mexico Environment Department ("Department"), filed suit against the Department, his

supervisors, and several co-workers (collectively the "Defendants").  He alleges discriminatory

and retaliatory treatment in violation of Title VII, the First Amendment, the Equal Protection and

Due Process Clauses of the Fourteenth Amendment, and the New Mexico Human Rights Act

("NMHRA").  He also alleges a state law claim for battery against Defendant Norman Norvelle.

In a prior order, the Court granted Defendants' motion to dismiss the due process claim,

the constitutional claims against Defendants Salomon Romero, John Rhoderick, David Torres,

and Norman Norvelle, and the claims against the individual Defendants under Title VII.  *See*

*Lobato v. New Mexico Env't Dep't, Envtl. Health Div.*, 838 F. Supp. 2d 1213 (D.N.M. 2011).

Subsequently, on February 15, 2012, the Court granted Plaintiff's motion to amend the

Complaint to include a claim for violation of the New Mexico Whistleblower Protection Act,

NMSA 1978, § 10-16C-1 ("WPA").  *See* Doc. 120.  At the same time, the Court denied

Defendants' motion for partial summary judgment on Plaintiff's claims for lost wages due to

employment discrimination under Title VII, the First Amendment, and the NMHRA.  *Id.*

Currently before the Court is Defendants' motion for summary judgment on Plaintiff's

NMHRA and Title VII claims (Count III), First Amendment claim (Count I), and WPA claim

(Count II).  Doc. 130.  Also before the Court is Plaintiff's motion to strike the expert testimony of

Dr. Anne Rose.  Doc. 127.

## I. Background

Plaintiff Michael Lobato, a Hispanic, was hired as a probationary employee with the New

Mexico Environment Department.  He worked as an inspector for Division V, the Farmington

Division, from December 29, 2007 until his termination on December 17, 2008.  Initially,

Plaintiff was supervised by Sal Misseri, the general manager of the Farmington office.  When

Misseri was placed on administrative leave in April of 2008,  Salomon Romero took over the role

of general manager and directly supervised Plaintiff.  In November of 2008, Norman Norvelle

replaced Salomon Romero as the general manager of the Farmington office.  Norvelle directly

supervised Plaintiff until his termination in December of 2008.  Both Salomon Romero and

Norvelle reported to Charles Lundstrom, the District V manager.  In turn, Lundstrom reported to

Carlos Romero, the Director of the Environmental Health Division.

In February of 2008, Plaintiff observed irregularities in the permitting process, including

the acceptance of bribes and other illegal activity by his supervisor at the time, Misseri.

Concerned, Plaintiff reported these permitting irregularities to Lundstrom, Misseri's direct

supervisor, as well as Judy Bentley, the Human Resources Director.  In response, Bentley and

Carlos Romero hired a third party to conduct an independent investigation into the permitting

irregularities.  Doc. 133, Ex. B, 9:8-13.  The investigation confirmed many of Plaintiff's

concerns.  As a result, Misseri was placed on administrative leave and Lundstrom was

reprimanded for failing to adequately supervise his employees.

After making these reports, Plaintiff allegedly began to experience workplace harassment

in the form of racial discrimination.  Among other things, Plaintiff was subjected to threats

against his employment, derogatory remarks about Hispanics, and verbal abuse.  For example, in

the spring of 2008, when Plaintiff was on a site with Misseri, the on-site contractor told Misseri

to "get the f***ing Mexican off my property."  When Plaintiff reported the incident to

Lundstrom, Lundstrom apparently laughed.

Shortly thereafter, Plaintiff heard through the grapevine a number of racial comments

attributable to Lundstrom.  For example, Misseri informed Plaintiff that he (Misseri) heard

Lundstrom say that he would "only hire Mexican women because they're submissive" or

something to that effect.  Two other employees told Plaintiff they heard Lundstrom refer to

Plaintiff as a "whistleblower," a "whiner and a bellyacher," and a "f***ing Mexican."  Finally,

when Plaintiff applied for a lateral position with the Solid Waste Department, Salomon Romero

advised Plaintiff he would never get the position because Lundstrom stated there "was no way in

hell he'd hire a Mexican" for the position.  Plaintiff reported these incidents to the Human

Resources Department.

Plaintiff has identified further incidents of alleged retaliation.  He states that he was

investigated for raising permitting irregularities.  Moreover, when he applied for a lateral transfer

to the Solid Waste Department, Lundstrom made false and negative statements to Chuck Akeley,

the individual hiring for the position in the Solid Waste Department.  What is more, Lundstrom

submitted a memorandum to Bentley outlining Plaintiff's performance problems and expressly

seeking to have Plaintiff fired.

Due to these incidents, Plaintiff filed a charge of discrimination with the EEOC in July of

2008.  Thereafter, Lundstrom was removed from the management chain of command regarding

Plaintiff.  However, because Lundstrom continued to remain involved in Plaintiff's supervision,

Plaintiff submitted two separate memoranda to Carlos Romero in October and November of 2008

raising concerns about the working environment at the Department.

On the morning of December 5, 2008, Plaintiff overheard Lundstrom and Norvelle

discussing employment matters in the adjacent office.  Plaintiff thought he heard Norvelle tell

Lundstrom that Plaintiff should be terminated.  Concerned, Plaintiff entered Norvelle's office and

confronted Norvelle about the termination comments.  Doc. 133, Ex. A, ¶ 23 (Affidavit of

Plaintiff).  Norvelle ordered Plaintiff to leave Norvelle's office and refused to discuss the matter

any further.  *Id.* at ¶ 24.   During the course of this interaction, Norvelle poked Plaintiff in the

face with his finger, making definite physical contact with Plaintiff.  *Id.*  In response, Plaintiff

contacted the police who investigated the incident that day.  *Id.* at ¶ 25.

Bentley and the Human Resources Department initiated an investigation of Plaintiff

which identified a series of incidents, five in total, that cumulatively warranted termination.  Doc.

130, Ex. E, ¶¶ 7, 13; Doc. 130, Ex. B, 74:8-14.  The Notice of Dismissal, served on Plaintiff on

December 17, 2008, sets forth each of these incidents in detail.  Doc. 130, Ex. A.  First, the

Notice states that Plaintiff falsified his initial employment application with the Department.  *Id.*

at p.1.  The Notice proceeds to present evidence Plaintiff dishonestly and falsely claimed a per

diem reimbursement.  *Id.* at pp. 1-2-.  What is more, the Notice highlights the fact that Plaintiff

failed to cooperate with the investigation in the per diem incident.  *Id.* at p. 2.  Fourth, the Notice

4

identifies a number of incidents where Plaintiff was rude and unprofessional to his fellow co-workers and members of the public, thereby violating the Department's Code of Conduct for employer/employee relations. *Id.* at pp. 2-3. Finally, the Notice cites the incident between Norvelle and Plaintiff as inappropriate and uncooperative conduct. *Id.* at p. 3. Based on these incidents, Plaintiff was terminated. Thereafter, Plaintiff filled the instant lawsuit.

## II. Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the non-moving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587. The Court will address Defendants' motion with this standard in mind.

## III. Analysis

### A. Title VII and NMHRA Claims

New Mexico case law does not require separate analyses for claims involving indirect discrimination under the NMHRA and Title VII arising from the same underlying events. *Orr v.*

5

*City of Albuquerque*, 417 F.3d 1144, 1149 n. 5 (10th Cir. 2005); *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 954 P.2d 65, 69-70 (N.M. 1998). Both claims are thus subject to the same three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this framework, the Plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If Plaintiff establishes a prima facie case, the burden then shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* If the Defendants make such a showing, the burden reverts to Plaintiff to show the proffered reason was a pretext for discrimination. *Id.* at 804. "[A] showing of pretext is evidence which allows a jury to infer discriminatory intent." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995): *see also E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1321 (10th Cir. 1992) ("Title VII only reaches pretextual cases where the advanced reason is shown to be a pretext for a discriminatory animus based upon a person's protected status.").

**(1) Prima Facie Case**

To establish a prima facie case for retaliation under Title VII, Plaintiff must demonstrate that (a) he engaged in protected opposition to discrimination, (b) a reasonable employee would have found the challenged action materially adverse, and (c) a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Plaintiff satisfies these three prima facie elements insofar as he was terminated five months after raising allegations of race discrimination and retaliation to the EEOC and a mere two months after raising allegations of permitting irregularities to his supervisor, Carlos Romero. *See* Doc. 122, ¶¶ 49-50. For the purposes of this motion, Defendants do not dispute Plaintiff's prima facie case for retaliatory discharge. Doc. 130, at p. 9.

There is, however, a dispute as to whether Plaintiff suffered any additional materially adverse actions.  In a footnote buried in his response brief, Plaintiff asserts that he was also subject to "threats and reprisals" because he opposed discrimination at the Department.  Doc. 133, p. 21 n. 2.  Without identifying any specific threats or reprisals, Plaintiff argues that the actions constitute adverse employment actions.  The Court disagrees.  More threats do not constitute adverse employment actions.  *See Valles–Hall v. Ctr. For Nonprofit Advancement*, 481 F.Supp.2d 118, 144 (D.D.C. 2007) ("mere threats . . . do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm").  There is therefore no basis to conclude that the unidentified "threats" to Plaintiff were materially adverse.  This is particularly true given that Plaintiff has not brought a claim alleging a hostile work environment based on pervasive and discriminatory threats.  *See* Doc. 133, p. 24-25 (expressly disclaiming a hostile work environment claim).  Indeed, Plaintiff does not even argue that the threats were severe enough to alter the terms of his employment.  *Id.* at 25.

Similarly, Plaintiff has not identified any reprisals, besides his termination, which qualify as materially adverse actions within the meaning of Title VII.  True, Plaintiff alleges that he was not promoted to another position in the Solid Waste Department, *see* Doc. 122, ¶ 20.  Yet, Plaintiff has expressly disclaimed a claim for failure to promote.  Doc. 133, at pp. 24.  Nor does he argue that the failure to promote altered the terms or conditions of his employment.  *Id.*  The Court will not therefore treat the incident as a materially adverse action.  In short, then, Plaintiff has failed to identify any materially adverse actions, other than his termination, which support a prima facie claim for retaliation under Title VII.

**(2) Legitimate, Non-discriminatory Reasons**

Because Plaintiff has established a prima facie case, the burden shifts to the Defendants to proffer a legitimate, non-discriminatory reason for Plaintiff's termination.  *Fye v. Oklahoma Corp. Com'n.*, 516 F.3d 1217, 1227 (10th Cir. 2008).  That is, Defendants must explain their decision to terminate Plaintiff "in terms that are not facially prohibited by Title VII."  *E.E.O.C. v. Flasher Co., Inc.*, *supra*, 986 F.2d at 1317.  The Defendants readily satisfy this requirement.

Defendants contend that the Department terminated Plaintiff based on the combination of a "series of incidents," five in total.  *See* Doc. 130, Ex. A ("Notice of Dismissal").  The first incident occurred when Plaintiff allegedly lied on his employment application and during his interview for his position at the Department.  Second, an internal investigation revealed that Plaintiff was improperly claiming per diem reimbursements.  For the third incident, Defendants point to Plaintiff's failure to cooperate with the per diem investigation.  Fourth, Defendants submit evidence that Plaintiff was rude and unprofessional in his dealings with supervisors and the public, thereby violating the Department's policy number 02-31 entitled Employer/Employee relations.  Finally, there was a confrontation between Plaintiff and his supervisor Norvelle where Plaintiff allegedly threatened to report Norvelle to upper management.  Defendants explain that these five incidents led to Plaintiff's termination; all five incidents are listed and memorialized in the Notice of Dismissal.  Doc. 130, Ex. A.

These instances of unprofessional, uncooperative, and dishonest conduct provide a legitimate, non-discriminatory reason for terminating Plaintiff.  *See, e.g., Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005) (violations of a code of conduct is a non-discriminatory reason for terminating an employee); *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) ("insubordination [can] serve as a legitimate non-discriminatory reason for

discharge to rebut the plaintiff's prima facie case" (emphasis omitted)); *Crumpacker v. Kansas Dep't of Human Resources*, 205 F. Supp. 2d 1209, 1216 (D.Kan. 2002) ("poor performance and inability to get along with others" are legitimate, nondiscriminatory reasons for terminating). The burden thus reverts to Plaintiff to demonstrate that Defendants' proffered reasons are merely pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

### (3) Pretext for Discrimination

To establish a genuine issue as to pretext, Plaintiff must demonstrate that the Defendants' "proffered non-discriminatory reason is unworthy of belief." *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) (quotations omitted). Plaintiff relies on three separate theories in an attempt to meet this burden. First, Plaintiff argues that the Department failed to follow its mandatory progressive-discipline policy, instead terminating Plaintiff with nothing more than a written notice. Second, Plaintiff contests the "string of incidents" that prompted the decision to terminate, insisting that they are unsupported by the evidence and subject to significant factual disputes. Finally, Plaintiff argues that Lundstrom was not removed from Plaintiff's chain of command; as such, his continued involvement and bias tainted the investigation and proximately caused the decision to terminate Plaintiff.

### (a) The Department's Progressive Discipline Policy.

Plaintiff maintains that the Department's failure to utilize its policy of progressive discipline demonstrates pretext. It is well-established that pretext can be shown by "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). According to State Personnel Board Rule 17.11.11 NMAC, probationary employees "may be suspended immediately with written notice and without right of

9

appeal to the board."  Doc. 130, Ex. 1, p.1.  Because Plaintiff was a probationary employee at the Department, Bentley and Romero retained the discretion to terminate him, effective immediately, without a disciplinary proceeding.  Their decision to forego a progressive disciplinary process is not therefore proof of pretext.  *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007).

Nonetheless, Plaintiff appears to argue that Defendants had an *un*written policy or practice of applying progressive discipline to probationary employees.  "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness."  *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).  There is no evidence in this record that Plaintiff was treated differently from other probationary employees when it came to discipline.  To the contrary, Plaintiff himself notes that he was terminated in the same manner as his fellow probationary employee Mestas – without progressive discipline.  *See* Doc. 133, ¶11.  While Lundstrom admitted that progressive discipline is the favored approach for probationary employees, that is not the same as saying Defendants had an unwritten policy or practice of providing probationary employees with progressive discipline.  *See* Doc. 133, Ex. C. at 13:22-25 (Lundstrom deposition).  Accordingly, Plaintiff has failed to establish that Defendants had an unwritten policy or practice of providing probationary employees with progressive discipline; thus, he cannot rely on *Kendrick* to establish pretext.

### (b) The "String of Incidents" Leading to Plaintiff's Termination.

Defendants admit that no single reason dominated the Department's decision to terminate; rather, the decision was based on the cumulative effect of a "string of incidents," five in total.

Doc. 130, p. 10 (explaining that Romero and Bentley "cumulatively evaluated Plaintiff's employment with The Department" and decided to terminate him accordingly); Doc. 130, Ex. A, at p.3 (basing the dismissal decision on Plaintiff's misconduct, namely the cumulative effect of five separate incidents); Doc. 130, Ex. 2 at 64:17-19.  Because the reason to terminate was cumulative, Plaintiff asserts that he need only cast substantial doubt on one of the five individual incidents that cumulatively led to his termination.

"[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."  *Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000).  The Tenth Circuit has, however, noted its unwillingness to apply this rule "rigidly."  *Id.*  To this end, the Tenth Circuit explained in *Tyler* that "when the plaintiff casts substantial doubt on *many* of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility."  *Id.* (emphasis added).  Put another way, the Plaintiff need not cast doubt on every reason offered by an employer.  "In some cases, . . . a successful attack on *part* of the employer's legitimate, non-discriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited."  *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303 (10th Cir. 2005) (emphasis added).[1]  A partial attack may succeed where the employer has not offered another stand-alone reason for the termination:

> Debunking one of the employer's explanations defeats the case for summary
> judgment only if the company has offered no other reason that, if that reason
> stood alone (more precisely if it did not have support from the tainted reason),

---

[1] In *Jaramillo*, the Tenth Circuit identified five exceptions to the general rule that an employee must show that each of the employer's proffered reasons is pretextual.  427 F.3d at 1310.  This case falls into the third exception where "the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them . . . ."  *Id.* (citing *Tyler,* 232 F.3d at 814).

would have caused the company to take the action of which the plaintiff is
complaining.

*Jaramillo*, 427 F.3d at 1310 (10th Cir. 2005); *see also Bryant v. Farmers Insurance Exchange*,
432 F.3d 1114, 1127 (10th Cir. 2005).

Plaintiff's theory of attack is based on the notion that the Department would not have
terminated him absent any one of the five incidents identified in the Notice of Dismissal.  This
theory would appear to track the language cited above in *Jaramillo*: Plaintiff would be
"debunking one of [The Department's] explanations" where the other four reasons could not have
"stood alone" to warrant Plaintiff's termination.  *Jaramillo*, 427 F.3d at 1310.  The fatal flaw in
this argument, however, is the fact that none of the listed "reasons for termination predominates
over the others . . . ."  *Bryant*, 432 F.3d at 1127.  To the contrary, the Department "offer[ed] a
plethora of reasons" that cumulatively warranted termination – all five incidents are listed in the
Notice of Dismissal.  *Jaramillo*, 427 F.3d at 1310.  While the confrontation between Plaintiff and
Norvelle was the "trigger point" for the termination, that is not to say it was the dominant reason;
more accurately, it was the last incident in a series of incidents that cumulatively triggered the
termination decision.  Doc. 130, Ex. 2, 62:22.  Because there was no dominant reason for the
termination, the Plaintiff must "raise[] substantial doubt about a *number* of" the reasons proffered
by Defendants.  *Tyler*, 232 F.3d at 814.

Recognizing the need to cast substantial doubt on a number of the reasons for his
termination, Plaintiff attempts to argue that "many or all of [Defendants'] stated reasons in
support of Plaintiff's termination [are] unworthy of belief" and/or unsupported by the evidence.
Doc. 133, p. 17.  Plaintiff first disputes the allegation that he submitted an inaccurate resume and
was untruthful during his job interview with the Department.  When Plaintiff was interviewed in

12

November of 2007, his application indicated he was an employee at the State Public Defender's office.  In fact, however, Plaintiff was no longer employed with the Public Defender at the time of his interview.  His resume was therefore inaccurate, an inaccuracy that Bentley and Romero attributed to dishonesty when they decided to terminate Plaintiff.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) ("a challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff").

Plaintiff has since submitted evidence demonstrating a more benign reason for the inaccuracy: he originally submitted his job application in January of 2007 when he was still employed by the Public Defender.  Plaintiff thus asserts that his resume was actually accurate when submitted.  In making this argument, however, Plaintiff fails to mention the fact that he never corrected the discrepancy in his resume during his interview with the Department in November.  *See* Doc. 133, p. 11, ¶ 49.  In fact, this is the first time Plaintiff has offered an explanation for his inaccurate resume.  *See* Doc. 133, Ex. A, ¶¶ 4-5.  As such, it is undisputed that neither Bentley nor Romero were informed of this reason for the error in Plaintiff's resume.  When they decided to terminate Plaintiff, they labored under the impression that his resume was inaccurate due to dishonesty.  Such a good-faith, albeit mistaken, belief on the part of Bentley and Romero is "not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998); *Flasher*, 986 F.2d at 1312 n. 12 ("a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual").[2]

---

[2] Indeed, it would appear that Plaintiff's resume was inaccurate even when he submitted it in January of 2007.  According to the employment records submitted in this case, Plaintiff's last day at the Public Defender was on October 7, 2006.  Doc. 130, Ex. 5, ¶ 30 ("the official SHARE record, Exhibit A, shows that Mr. Lobato worked at the Public Defenders Office from

Plaintiff also disputes Bentley and Romero's decision to terminate him based on an investigative finding that he falsified a per diem reimbursement claim in February of 2008. After a business trip, Plaintiff submitted a reimbursement claim for a stay at La Quinta Inn in Albuquerque on the night of February 17, 2008. He was, however, unable to provide Judy Bentley, the Human Resources Manager, with a receipt evidencing his stay at La Quinta. Curiously though, Plaintiff submitted a receipt for breakfast at 5:14 AM the next day – in Bloomfield, NM. Suspicious that Plaintiff may never have stayed at the Albuquerque La Quinta,[3] Bentley investigated the claimed reimbursement. Among other things, she asked Plaintiff how he could have stayed in Albuquerque one evening and yet eaten breakfast very early the following morning in Bloomfield. Plaintiff never replied to Bentley's request for an explanation, leading her to conclude that Plaintiff was dishonest in requesting the per diem reimbursement. Doc. 130, Ex. E, ¶ 7. While Plaintiff ultimately reimbursed the Department for the amount he had claimed for staying at La Quinta, Doc. 133, Ex. A, ¶¶ 43-44, that does not alter the fact that Plaintiff was dishonest in requesting per diem reimbursements. Plaintiff has thus failed to cast any doubt on the second reason for his termination: dishonesty.

Third, Plaintiff disputes Bentley's conclusion that Plaintiff was uncooperative during the per diem investigation. As noted, Bentley asked Plaintiff to respond to a number of written questions. While Plaintiff asked for and was granted several extensions to respond, he never

---

October 2003 until October 7, 2006"). Thus, Plaintiff's resume was inaccurate in January of 2007 to the extent it stated that he was currently employed by the Public Defender. In addition, the resume entirely omits the fact that Plaintiff worked at the Department of Corrections from June 2007 to August 2007. *See id.* at Attachment M. This analysis confirms the fact that the resume was inaccurate – which Bentley and Romero could attribute to Plaintiff's dishonesty. *See* Doc. 13, Ex. E, ¶ 30.

[3] Bloomfield is almost 170 miles away from Albuquerque.

14

responded, prompting Bentley to conclude that he was non-compliant with the investigation. Doc. 130, Ex. E, ¶ 7.  In an attempt to dispute this conclusion, Plaintiff argues that his prior attorney failed to submit Plaintiff's responses to Bentley.  Doc. 133, p. 14, ¶ 61 ("Only later did Lobato learn that his attorney had not sent in his responses to Bentley.").  Even if this excuse were true, it was never conveyed to Bentley during the investigation, let alone before Plaintiff was terminated.  *See Kendrick*, 220 F.3d at 1231.  It is thus undisputed that Bentley sincerely believed Plaintiff was uncooperative.  *See McKnight*, 149 F.3d at 1129; *see also Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (the relevant inquiry for determining pretext is "whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue").  Again then, Plaintiff has failed to raise a genuine issue as to the third reason for his termination: non-compliance with a Department investigation.

Fourth, it is undisputed that Plaintiff was rude and unprofessional on at least two occasions.  The Notice of Dismissal identifies one incident where Plaintiff yelled and cussed at Alex Mendiola, The Department's Worker's Compensation Administrator.  Doc. 130, Ex. A, p. 3.  A second incident occurred when Plaintiff showed up at a woman's house, again yelling and cussing.  Doc. 130, Ex. A, pp.2-3. While Defendants have not submitted the woman's handwritten complaint, there is no dispute that this incident, as well as the Mendiola incident, actually took place.  Thus, there is no doubt that Plaintiff was unprofessional in his treatment of both a fellow employee and the public, thereby violating the Department's Code of Conduct for Employer/Employee conduct.

Unable to dispute these two incidents of unprofessional conduct, Plaintiff shifts gears and argues that he was never offered the opportunity to explain his unprofessional conduct; which he views as powerful evidence of pretext.  In support of this position, Plaintiff relies on *Laxton v.*

15

*Gap Inc.*, 333 F.3d 572, 581 (5th Cir. 2003), where the Fifth Circuit stated: "the fact that the employer never gave the plaintiff a chance to explain her conduct or improve was sufficient to demonstrate pretext."  Even though Plaintiff was not given a chance to explain his unprofessional conduct in this case, his reliance on *Laxton* is misplaced.

Indeed, Plaintiff overlooks fifty percent of the reasoning in *Laxton*.  There, the Fifth Circuit held that an employee had cast doubt on the proffered reasons for her termination "in two ways."  *Id.* at 580.  First, the employee demonstrated that the reasons provided for her termination were demonstrably false.  *Id.*  In addition, she undermined the credibility of her employer due to its failure to grant her the opportunity to explain or improve her conduct.  *Id.* at 581.  In this light, the Fifth Circuit did not hold that the employee had established pretext solely because her employer failed to provide her with an opportunity to explain herself.  Quite to the contrary, the Fifth Circuit's pretext determination was based on the fact that the employer's reasons were demonstrably false, coupled with the failure to provide the employee with an opportunity to tell her side of the story.  *Id.* at 580.  At the very least, then, there were two reasons for finding pretext in *Laxton*.

*Lazton* is of little help in this case where Plaintiff has failed to attack the substance of the reasons for his termination.  As noted, it is undisputed that the incidents of unprofessionalism occurred and constituted violations of the Department's Code of Conduct for Employer/Employee conduct.  While Defendants failed to provide Plaintiff with an opportunity to explain these incidents, that alone does not establish pretext, not even under the reasoning in *Laxton*.

Finally, Plaintiff argues that Defendants misrepresented his confrontation with Norvelle, the fifth incident and final "trigger point" for his termination.  Rather than threatening Norvelle,

Plaintiff alleges that quite the opposite took place: Norvelle poked him in the eye, the basis for Plaintiff's state law battery claim.  There are competing stories as to what took place between Plaintiff and Norvelle during their confrontation, admittedly creating a genuine dispute of material fact.  *Compare* Doc. 133, Ex. F, 60:6-22 (Norvelle Deposition), *with* Doc. 130, Ex. E, Attachment C (e-mail of Edrynn Mestas), *and* Doc. 133, Ex. A, ¶¶ 23-24 (affidavit of Plaintiff). But, one disputed reason among many is not sufficient to show that the Defendants' cumulative decision to terminate Plaintiff was unfounded and pretextual.  *See Jaramillo*, 427 F.3d at 1310-11.  This is particularly true in this case where there are four undisputed incidents demonstrating Plaintiff's dishonesty, failure to cooperate, unprofessional conduct, and violation of the Department's Code of Conduct.  These four incidents all support the decision to terminate.  *See*, *e.g.*, *Green v. New Mexico*, 420 F.3d at 1192 (violations of a code of conduct is a non-discriminatory reason for terminating an employee); *Maston v. St. John Health Sys., Inc.*, 296 Fed. Appx. 630, 636 (10th Cir. 2008) ("failure to cooperate" was a legitimate, non-discriminatory reason for termination); *Debord v. Mercy Health Sys. of Kansas, Inc.*, 2012 WL 941387, at * 3 (D. Kan. Mar. 20, 2012) ("disruption, continued texting, and dishonesty" were legitimate, non-discriminatory reasons for termination).  Ultimately then, even if there is a dispute about what occurred between the Plaintiff and Norvelle, Plaintiff has failed to "undermine [Defendants'] credibility to the point that a reasonable jury could not find in [their] favor." *Jaramillo*, 427 F.3d at 1310-11.  Accordingly, it cannot be said that the reasons for Plaintiff's termination are so unworthy of belief so as to be pretextual.

### *(c) Subordinate Bias Liability*.

Plaintiff insists there is strong evidence of Lundstrom's racial animus towards Plaintiff. Thus, even though Lundstrom was not directly involved in the decision to terminate, Plaintiff

17

argues that Lundstrom nonetheless proximately caused the termination decision.  Based on a theory of subordinate bias, then, Plaintiff asserts that a finding of pretext is appropriate.  *See* Doc. 133, p. 22.

　　To prevail under a subordinate bias theory, Plaintiff must first establish a genuine issue of material fact concerning Lundstrom's racial bias.  *See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 488 (10th Cir. 2006) ("*BCI*").  In general, "isolated racial comments" are insufficient to establish pretext unless they "can somehow be tied to the employment actions disputed in the case at hand."  *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000).  In this case, Plaintiff has presented evidence that Lundstrom called Plaintiff a "f*** Mexican" and told Romero there was "no way in hell he'd hire a Mexican" or words to that effect.  Doc. 133, at ¶¶ 19 -20.[4]  There is also evidence of Lundstrom's unfazed, indeed humorous, response to a racially charged encounter between Lobato and a contractor.  *Id.* at ¶ 17.  Additionally, Lundstrom recommended Plaintiff's termination on at least one occasion, *id.* at ¶ 26, and attempted to prevent Plaintiff from laterally transferring to a position with the Solid Waste Department, *id.* at 23.  Together, these comments and actions, albeit infrequent, create a

--------

　　[4] In passing, Defendants argue that these statements are hearsay and thus inadmissible evidence to demonstrate Lundstrom's racial bias.  Doc. 130, p. 11; Doc. 138, pp. 4-5.  Yet, Defendants cite no authority to support their hearsay challenge.  The Court will not therefore construct an argument on behalf of Defendants.  *See Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1208 (D. Colo.  2008) ("If Plaintiff's counsel could not be bothered to research and support his tepid argument, then this court has no obligation to expend public resources ferreting it out.").  Moreover, Romero's statement to Plaintiff that Lundstrom stated there was "no way in hell he'd hire a Mexican" appears admissible as a non-hearsay admission of a party opponent party because both Romero and Lundstrom were managers involved in the decision to terminate Plaintiff.  *See* Fed. R. Civ. P. 801(d)(2)(D); *Jaramillo*, 427 F.3d at 1314 ("In order for a statement to qualify as an admission of a party opponent, the speaker must be involved in the decisionmaking process affecting the employment action involved.") (quotations omitted).

genuine issue regarding Lundstrom's racial animus in disciplinary matters – a point Defendants

do not meaningfully contest.  *See BCI*, 450 F.3d at 489-90.

      In addition to racial animus, Plaintiff must also establish that Lundstrom's bias translated

into discriminatory actions which proximately caused Plaintiff's termination.  *Id.* at 490.  This

proximate-cause standard requires Plaintiff to "establish more than mere 'influence' or 'input' in

the decisionmaking process."  *Id.* at 487 (quoting *Lust v. Sealy, Inc.*, 383 F.3d 580, 584 (7th Cir.

2004)).  The Plaintiff must show "the biased subordinate's discriminatory reports,

recommendations, or other actions *caused* the adverse employment action."  *Id.* at 487 (emphasis

added) (adopting this standard from the Seventh Circuit decision in *Lust*, 383 F.3d at 584).  This

causal standard comports with the statutory definition of "employer" and tort-like concepts of

causation.  *Id.* at 487-88 (citing Restatement (Second) of Agency § 219 (describing the scope of a

master's liability "for the torts of his servants" and thereby incorporating standard tort concepts

like causation)).

      Plaintiff attempts to establish causation by arguing that Lundstrom retained a supervisory

role over Plaintiff and used his (Lundstrom's) influence to submit negative and often false

information about Plaintiff.  For example, Lundstrom made false and negative statements to

Chuck Akeley about Plaintiff's dishonesty.  Doc. 133, ¶ 29; Doc. 133, Ex. I, at p. 3.  Lundstrom

also asked Plaintiff's supervisor, Carlos Romero, to send an e-mail to Bentley regarding

Plaintiff's request to move offices (apparently a move contested by Lundstrom).  Doc. 133, Ex.

L.  Finally, Lundstrom himself sent Bentley a fax asking her to terminate Plaintiff for

complaining.  Doc. 133, Ex. I, at p. 3.

      Initially none of these incidents appear related to racial animus and merely emphasize

Lundstrom's interference in regard to Plaintiff's employment.  Moreover, this evidence fails to

link Lundstrom's input with Bentley and Romero's independent decision to terminate Plaintiff. While Lundstrom may have made false statements to Akeley regarding Plaintiff's dishonesty, Akeley played no role in the decision to terminate Plaintiff: he was simply an employee with the Solid Waste Division, not Plaintiff's supervisor.[5]  Similarly, there is no evidence demonstrating that Carlos Romero's e-mail to Bentley about Plaintiff's request to move offices contributed to, let alone caused, the decision to terminate.  To the contrary, the Notice of Dismissal lists five incidents that lead to Plaintiff's termination; none of those incidents involve Plaintiff's request to move offices.  Indeed, the Notice of Dismissal makes no mention of this incident as a basis for the termination decision.  *See* Doc. 130, Ex. A.  Finally, Romero reprimanded Lundstrom for sending Bentley a fax asking her to terminate Plaintiff.  This express reprimand evinces Bentley and Romero's careful steps to distance Lundstrom from the investigation and decision to terminate Plaintiff.  Doc. 133, Ex. I.

In fact, Bentley and Romero took a number of additional steps to insulate both their investigation and termination decision from Lundstrom's bias.  In *BCI*, the Tenth Circuit reaffirmed its earlier decisions that, "because a plaintiff must demonstrate that the actions of the biased subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee."  *Id.* at 488 (citing *English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1011 (10th Cir. 2001)).  Here, it is undisputed that Bentley and Romero independently investigated the string of incidents warranting Plaintiff's termination.  To begin, there was an independent investigation by a third party into the permitting

---

[5] Apparently, Akeley interviewed individuals for a position in the Solid Waste Bureau. Plaintiff applied for this position as a lateral transfer within the Department.  Plaintiff, however, expressly disclaims a failure-to-promote claim.

irregularities at the Department's Bloomfield office. Doc. 133, Ex. B, 9:6-13, 73:15-22.

Subsequent to that investigation, Bentley investigated the per diem reimbursement incident as

well as the confrontation between Norvelle and Plaintiff.  Doc. 133, Ex. E ¶¶ 7, 13.  Bentley even

asked Plaintiff for his input regarding the per-diem-reimbursement incident.  *BCI*, 450 F.3d at

488 (also noting that, "under our precedent, simply asking an employee for his version of events

may defeat the inference that an employment decision was . . . discriminatory").

 Unlike *BCI* then, this is not a case where Bentley and Romero relied exclusively on biased

information from a subordinate, failed to make an independent inquiry into the matter, and did

not ask the employee for his side of the story before discharging him.  *BCI*, 450 at 491.  To the

contrary, the undisputed evidence establishes that Bentley and Romero conducted their own

independent investigation and asked Plaintiff for his side of the story.  This is therefore a case

where "the employer has taken care not to rely exclusively on the say-so of the biased

subordinate, and the causal link is defeated . . . ." *Id.* at 488.  As such, because Plaintiff has

failed to establish the requisite causal connection between Lundstrom's bias and the decision to

terminate, Plaintiff's subordinate-bias theory fails to establish pretext.

 In sum, Plaintiff is unable to establish that Defendants' legitimate, non-discriminatory

reasons for termination were merely pretext for discrimination; thus, the Court grants summary

judgment in Defendants' favor on the Title VII and NMHRA retaliatory discharge claim (Count

III).

**B. Equal Protection Claim**

 While Defendants brought a motion for summary judgment on Plaintiff's Title VII claim,

they did not move for summary judgment on Plaintiff's equal protection claim.  A court may

enter summary judgment on a claim sua sponte when two conditions are met: "(1) there is no

dispute of material fact; (2) the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment." *David v. City & County of Denver*, 101 F.3d 1344, 1359 (10th Cir. 1996).  Here, both conditions are met, warranting summary judgment.

To begin, there is no dispute of material fact regarding Plaintiff's equal protection claim. To establish a prima facie case of disparate treatment,[6] Plaintiff must show that: (i) he is a member of a protected class; (ii) he suffered an adverse employment action; and (iii) similarly situated employees were treated differently.  *See Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).  This equal protection claim is analyzed under the same burden shifting approach that governed Plaintiff's Title VII claim.  *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("[T]he elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII.").  There is, however, no evidence that Plaintiff was treated differently from similarly situated employees.

The lack of such evidence is not for lack of Plaintiff's opportunity to present such evidence.  As noted in Section II.A *supra*, Plaintiff submitted evidence to support his Title VII claim and demonstrate pretext on the part of Defendants.  At that time, Plaintiff had the opportunity to develop facts to support his equal protection claim.  For example, Plaintiff could have presented evidence that he was treated differently from similarly situated employees – evidence that would have been relevant to demonstrate pretext and establish the prima facie

---

[6] Initially, Plaintiff appeared to assert both a failure-to-promote and a disparate-treatment claim under the Equal Protection Clause.  *See Lobato*, 2011 WL 7063238, at *, 7-9.  Plaintiff has, however, since expressly disclaimed a failure-to-promote claim.  As a result, disparate treatment is the sole basis for his equal protection claim.

elements of the equal protection claim.  *See Kendrick*, 220 F.3d at 1232.  Despite this

opportunity, Plaintiff failed to submit evidence of disparate treatment of similarly situated

employees.  To the contrary, Bentley submitted evidence that Plaintiff was treated equivalently to

similarly situated employees without response.  Doc. 130, Ex. E, ¶ 9.

Nonetheless, the Court will assume that Plaintiff has established a prima facie case of

disparate treatment.  The burden thus shifts to the Defendants to establish a legitimate, non-

discriminatory reason for Plaintiff's termination.  They did just that, identifying five incidents

listed in the Notice of Dismissal that warranted termination.  Accordingly, the presumption of

discrimination established by Plaintiff's prima facie showing of disparate treatment "simply

drops out of the picture."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).  The

burden then shifts back to Plaintiff to demonstrate pretext.  But, as explained in Section II.A

*supra*, Plaintiff has failed to establish that Defendants' reasons for termination were merely

pretext for discrimination.  He had the opportunity to do so in defending his Title VII claim, but

failed to do so.

In this light, both conditions for this Court to grant summary judgment sua sponte have

been met: (1) there is no dispute of material fact and (2) the Plaintiff had an opportunity to

present evidence to support his claim.  *David*, 101 F.3d at 1359.  Accordingly, because the Court

grants summary judgment in Defendants' favor on the Title VII claim, so too it will grant

summary judgment on Plaintiff's equal protection claim.  *See Drake*, 927 F.2d at 1162 ("Because

plaintiff's Title VII disparate treatment and disparate impact claims failed, so would his claims

under §§ 1981 and 1983.").

**C. First Amendment**

Plaintiff alleges that he was retaliated against and ultimately terminated for reporting irregularities in permitting at the Department.  When analyzing a free speech claim based on retaliation by an employer, the Tenth Circuit applies the five-prong *Garcetti/Pickering* test.  *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  In their motion for summary judgment, Defendants do not dispute the first three elements of the *Garcetti* test.  Rather, they argue that Plaintiff has failed to establish the last two elements of the test, namely, "(4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct."  *Id.*  These last two elements are ordinarily for the trier of fact, except when "there simply is no evidence in the record from which a trier of fact could reasonably conclude the [protected speech] was a motivating factor in [the plaintiff's] termination." *Id.* at 750; *see also Maestas v. Segura*, 416 F.3d 1182, 1188–92 (10th Cir. 2005) (affirming a grant of summary judgment because plaintiffs failed to present sufficient evidence of causation).

To satisfy the fourth prong of a First Amendment retaliation claim, the Plaintiff must show that: (1) he suffered an adverse employment decision and (2) his protected speech was a "substantial motivating factor" in the adverse employment decision.  *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1236 (10th Cir. 2009).  Under the first part of this test, an "adverse employment action" is an action which would deter a reasonable person from exercising his First Amendment rights.  *Id.* at 1238.  As explained earlier, *see supra* Section III.A.1, Plaintiff suffered an adverse employment action when he was terminated in

24

December of 2008.  What is more, there is no question in this case but that Defendants have "articulate[d] some legitimate, non-discriminatory reason for the adverse employment action" – namely, the string of five incidents that cumulatively triggered Plaintiff's termination.  *Young*, 468 F.3d at 1249.  As noted, *see supra* Section III.A.3, Plaintiff failed to establish that the reason for his termination was pretextual.  Plaintiff is thus left to emphasize the fact that he was terminated just a month after reporting permitting improprieties at the Bloomfield office under Lundstrom's watch.

Although "protected conduct closely followed by adverse action may justify an inference of retaliatory motive," *Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir.1996), "[t]he mere temporal proximity of Plaintiff's protected speech to [the adverse action] is insufficient, without more, to establish retaliatory motive."  *Butler v. City of Prairie Village*, 172 F.3d 736, 746 (10th Cir. 1999).  Additional evidence of retaliatory motive includes, among other things, evidence that "the protected speech implicated the individual defendant in wrongdoing."  *Baca v. Sklar*, 398 F.3d 1210, 1212 (10th Cir. 2005); *see also Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1236 (10th Cir. 2009).  Citing *Baca*, Plaintiff argues that his protected speech directly implicated Lundstrom, under whose watch Sal Misseri was taking bribes from members of the regulated community at the Bloomfield office.  Doc. 133, p. 26.  *Baca* is, however, inapposite for the simple reason that Lundstrom did not terminate Plaintiff; Bentley and Romero terminated Plaintiff after conducting an independent investigation.  While Plaintiff's protected speech may implicate Lundstrom, it does not implicate Bentley or Romero in wrongdoing, and thus does not evidence retaliatory motive on the part of the decisionmakers.

At bottom then, Plaintiff relies solely on temporal proximity to establish retaliatory motive on the part of Bentley and Romero.  As explained in *Butler*, temporal proximity alone is

insufficient to establish retaliatory motive.  172 F.3d at 746.  Because there is no additional

evidence from which a finder of fact could reasonably conclude that Bentley and Romero fired

Plaintiff for his protected speech, the Court grants Defendants' motion for summary judgment on

the First Amendment claim.[7]

## D. Whistleblower Protection Act Claim

Plaintiff alleges that the Department retaliated against him in violation of the

Whistleblower Protection Act ("WPA") for reporting improper permitting practices and illegal

racial discrimination.  Doc. 122, ¶¶ 40-43.  The Department does not dispute that Plaintiff spoke

out about improper practices.  Rather, the Department asserts the affirmative defense of a

legitimate reason to terminate Plaintiff.

The WPA provides public employers with an affirmative defense.  Specifically, the

statute provides:

> It shall be an affirmative defense to a civil action brought pursuant to this section that
> the action taken by a public employer against a public employee was due to the
> employee's misconduct, the employee's poor job performance, a reduction in work
> force or other legitimate business purpose unrelated to conduct prohibited pursuant
> to the Whistleblower Protection Act and that retaliatory action was not a motivating
> factor.

NMSA 1978, § 10-16C-4(B).  The statute is written in the conjunctive; thus, the Department has

the burden of demonstrating that (1) it had a legitimate business purpose for firing Plaintiff, *and*

(2) retaliatory action was not a motivating factor in the decision to terminate.

---

[7] Because the Court determines that Plaintiff's speech was not a substantial motivating
factor, it need not consider the fifth and final *Garcetti* factor, whether the defendant would have
reached the same employment decision in the absence of the protected conduct; although logic
suggests the result.

The Department has established both elements of an affirmative defense under the WPA. As noted, the Department had a legitimate, non-discriminatory reason for terminating Plaintiff: after investigation, it concluded he was unprofessional, uncooperative, and dishonest. The Department has further established that retaliation was not a motivating factor in the decision to terminate. Put another way, the Department has refuted any evidence of pretext by demonstrating that Bentley and Romero conducted independent investigations, identified five bases for the decision to terminate, and made sure the decision to terminate was independent from any subordinate bias or retaliatory motive. Accordingly, because the Department has established an affirmative defense, the Court will grant it summary judgment on this claim.

**E. State Law Battery Claim**

28 U.S.C. § 1367(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims." *Koch v. City of Del City*, 2011 WL 5176164, at * 14 (10th Cir. Nov. 2, 2011). Similarly, the Supreme Court has long stated, "If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (quotations omitted)). Because this Court grants summary judgment as to all the federal law claims, the Court will not exercise supplemental jurisdiction over Plaintiff's state law battery claim. Therefore, Plaintiff's state law battery claim is dismissed without prejudice.

**F. Motion to Strike Expert Testimony**

The Court need not rule on Plaintiff's motion to strike the expert testimony of Anne Rose as it is moot.  Doc. 127.

**IV. Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment. The Court also dismisses Plaintiff's equal protection and state law battery claims.

Dated this 30th day of July, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE.